WILLIAM MINOT, JR. & others *vs.* CITY OF BOSTON & another.

Suffolk.   Jan. 20. — July 3, 1886.   MORTON, C. J., DEVENS & GARDNER, JJ., absent.

The power conferred by the St. of 1846, *c.* 167, § 11, and the St. of 1861, *c.* 105, § 13, upon the city council of Boston and Charlestown respectively to appropriate the surplus income arising from water rates to a sinking fund, and which, by the St. of 1875, *c.* 80, and an ordinance passed in pursuance thereof, became vested in the Boston Water Board, is not taken away by the St. of 1875, *c.* 209 (Pub. Sts. *c.* 29).

PETITION, under the St. of 1846, *c.* 167, § 13, filed January 29, 1885, by one hundred and nineteen legal voters of Boston for the appointment of three commissioners, who, upon due notice to the parties, might, if they should think proper, reduce the prices for the use of water fixed by the Boston Water Board.

The case was heard by *W. Allen*, J., and reserved for the consideration of the full court; and appears in the opinion.

*J. L. Stackpole*, for the petitioners.

*A. J. Bailey*, for the respondents.

FIELD, J. By the St of 1846, *c.* 167, § 9, the city council of the city of Boston was authorized to issue, " from time to time, notes, scrip, or certificates of debt, to be denominated, on the face thereof, ' Boston Water Scrip,' to an amount not exceeding, in the whole, the sum of three millions of dollars, bearing interest," &c.; and, by § 10, to issue, in addition to this sum of three millions of dollars, whenever and so far as might be necessary, " notes, scrip, or certificates of debt, in the manner prescribed in the preceding section, to meet all payments of interest which may accrue upon any scrip by them issued; provided, however, that no scrip shall be issued for the payment of interest as aforesaid, after the expiration of two years from the completion of said aqueducts and other works; but payment of all interest that shall accrue after that time shall be made from the net income, rents, and receipts for the use of the water, if they shall be sufficient for that purpose; and if not, then the payment of the deficiency shall be otherwise provided for by the city council." By § 11, " the city council shall, from time to time, regulate the price of rents for the use of the water, with a view to the payment, from the net income, rents, and receipts therefor, not only of the semiannual interest, but ultimately of the principal also of the ' Boston Water Scrip,' so far as the same may be practicable and reasonable. And the said net surplus income, rents, and receipts, after deducting all expenses and charges of distribution, shall be set apart as a sinking fund, and shall be appropriated for and towards the payment of the principal and interest of the said scrip," &c. By § 12, if, at any time after two years from the completion of the works, " the surplus income and receipts for the use of the water distributed under the provisions of this act, at the price established by the city council, after deducting all expenses and charges of distribution, shall, for any two successive years, be insufficient to pay the accruing interest on the said scrip, then the Supreme Judicial Court, on the petition of one hundred or more of the legal voters of said city, praying that the said price may be raised and increased so far as may be necessary for the purpose of paying, from the said surplus income and receipts, the said accruing interest, . . . . may appoint three commissioners, who . . . . may raise and increase the said price, if they shall judge proper, so far as may be necessary, in their judgment,

for the purpose aforesaid, and no farther," &c. By § 13, "If the surplus income and receipts for the use of the water, distributed under the provisions of this act, at the price established by the city council, after deducting all expenses and charges of distribution, shall, for any two successive years, be more than sufficient to pay the accruing interest on the 'Boston Water Scrip' hereinbefore mentioned, then the Supreme Judicial Court," on a similar petition, "may appoint three commissioners, who . . . . may, if they shall judge proper, reduce the price established by the city council; provided that such reduction shall not be so great that the surplus income and receipts aforesaid will, in the judgment of the said commissioners, be thereafter insufficient for the payment of the said accruing interest." It is under this last section that this petition is brought. By subsequent statutes the city was authorized to issue additional amounts of scrip.

By the St. of 1861, c. 105, the city of Charlestown was authorized to take the waters of Mystic Pond, &c., to regulate the use of the water and "establish the prices or rents to be paid for the use thereof;" and by § 11 the city council was authorized to issue scrip, &c., and by § 13 it was provided that "the city council shall, from time to time, regulate the price or rent for the use of the water, with a view to the payment, from the net income and receipts, not only of the semiannual interest, but ultimately of the principal of said debt so contracted, so far as the same may be practicable and reasonable." The subsequent acts giving additional power to the city of Charlestown need not be noticed, except that the St. of 1871, c. 159, § 2, provides that "the income derived from water rates, under the several acts authorizing the construction and extension of water works in said city, after deducting cost of maintenance, and interest on the water bonds, shall be applied to the reduction of the water debt, and shall not be used for any other purpose whatever," and a similar provision is contained in the St. of 1872, c. 85, § 2.

The cities of Boston and Charlestown were united by the St. of 1873, c. 286, and by § 12 the Mystic Water Board established in Charlestown continued to be a separate organization from the Cochituate Water Board established in Boston "until the said city council shall determine to unite it with the Cochituate Water Board of Boston."

By the St. of 1875, *c.* 80, the city council was authorized to establish the Boston Water Board, and to confer upon that board the powers granted to the city by the statutes "with reference to supplying said city with water," and the powers of the Cochituate and Mystic Water Boards; and by § 1 "said board may also establish and regulate the price or rents for the use of said water, subject to the provisions of" the St. of 1846, *c.* 167, §§ 12, 13, "and the words 'Boston Water Scrip' in said sections shall be construed to include the whole amount of outstanding loans representing the cost of the water works;" and by § 2 the Cochituate Water Board and the Mystic Water Board were, upon the appointment of the Boston Water Board, abolished. This Boston Water Board was established by the city council of the city of Boston by an ordinance passed March 22, 1876, and it may be assumed that, pursuant to the St. of 1875, *c.* 80, § 1, the powers conferred upon the city of Boston by the St. of 1846, *c.* 167, and the acts in addition thereto, and upon the city of Charlestown by the St. of 1861, *c.* 105, and the acts in addition thereto, and upon the city councils, respectively, of these cities, were, with limitations not material to be here noticed, delegated to the Boston Water Board, and that the regulation of the water rates for the whole water supply of the city, after the two cities were united, was thus put under the control of the Boston Water Board, subject to the power reserved to the city council, and to the provisions of the St. of 1846, *c.* 167, §§ 12, 13.

At the argument, perhaps in consequence of a change in the water rates made after the petition was filed, the petitioners waived all their complaints but one, which, as stated in the report, is "that the sums paid from the current water rates of each year for creating a sinking fund for the extinguishment at maturity of such part of the Boston water scrip as was issued subsequently to the passage of the municipal indebtedness act of 1875 were improperly and illegally taken."

The St. of 1875, *c.* 209, has been incorporated into the Pub. Sts. *c.* 29. By § 9 of this chapter, it is provided that "The interest on all debts shall be raised by taxation annually. When a debt is payable at a period exceeding ten years, the city or town shall, and when payable at a period not exceeding ten years may, at the time of contracting the same, establish a sinking

fund, and contribute thereto from year to year an amount raised annually by taxation sufficient with its accumulations to extinguish the debt at maturity; and, when payable at a period not exceeding ten years, the city or town shall raise by taxation annually not less than eight per cent of the principal thereof, and shall set apart the same for a sinking fund until an amount is raised sufficient with its accumulations to extinguish the debt at its maturity; and shall raise any balance necessary for such extinguishment, by taxation, in the year before the maturity of the debt," &c. Section 14 provides as follows: "Nothing contained in the first seventeen sections shall be construed as prohibiting the inhabitants of towns, or city councils, from paying or providing for the payment of any debts at earlier periods than is therein required; . . . . or from adding to any sinking funds . . . . any sums derived from taxation or other sources, which are not, required by law to be otherwise expended; and such additions may be made for the purpose of reducing the entire debt for the redemption of which the sinking fund was established, or of reducing the amount to be raised by taxation for such fund."

By the Pub. Sts. c. 11, § 34, "The assessors shall each year assess taxes to an amount not less than the aggregate . . . . of all sums which are required by law to be raised by taxation by the said cities or towns during said year; . . . . and the assessors may deduct from the amount required to be assessed the amount of all the estimated receipts of their respective cities or towns (except from loans or taxes) which are lawfully applicable to the payment of the expenditures of the year, but such deduction shall not exceed the amount of such receipts during the preceding year." It is not necessary to decide that in the expenditures mentioned in this section are included the contributions to sinking funds which towns and cities are required each year to make, however much might be said in favor of such a construction, because the Pub. Sts. c. 29, § 14, enact that city councils may provide for the payment of debts at earlier periods than is in that chapter required, and may add to any sinking funds any sums derived from other sources than taxation "for the purpose of reducing the entire debt for the redemption of which the sinking fund was established," as well as for "reducing

the amount to be raised by taxation for such fund." There is nothing in the St. of 1875, *c.* 209, or in the Pub. Sts. *c.* 29, that indicates that the Legislature intended to repeal any of the provisions relating to the establishment of water rates contained in the St. of 1846, *c.* 167, and the St. of 1861, *c.* 105, and both these acts, as well as many other acts passed for supplying other cities with pure water, provide that the city council shall regulate the price or the rent for the use of the water with a view to the payment from the net income, not only of the semiannual interest, but ultimately of the principal of the water debt. The different provisions of the statutes may well stand together; the St. of 1875, *c.* 209, gives greater security to the holders of the indebtedness that it will be paid at maturity, but there is nothing in it inconsistent with the policy of making the water rates extinguish the debts incurred in procuring a supply of water.

It may also be assumed, without deciding, that the provisions for a petition to the Supreme Judicial Court found in the St. of 1846, *c.* 167, §§ 12, 13, although not found in the St. of 1861, *c.* 105, are now applicable to all water rates established by the Boston Water Board, because by the St. of 1875, *c.* 80, the board in establishing rates is expressly made subject to these provisions. By these sections of the St. of 1846 the Legislature apparently intended that the rates established should be sufficient, after deducting all expenses and charges of distribution, to pay the accruing interest on the water debt unless both the city council and the commissioners established a lower rate; but that if for two successive years the rates should be more than sufficient for this purpose, then the commissioners to be appointed by the Supreme Judicial Court might, if they judged proper, reduce the rates, but not so that the surplus income should be insufficient to pay the accruing interest on the debt. The argument was not pressed that the court must necessarily appoint commissioners, if it were shown that for two successive years the income and receipts for the use of the water, after deducting all expenses and charges of administration, were more than sufficient to pay the accruing interest of the water debt, although that question is reserved in the report. The learned counsel for the petitioners apparently desired to raise only the question whether payments can lawfully be made out of the water rates to the

sinking fund for the redemption of bonds issued since the passage of the St. of 1875, *c.* 209.

It is not, perhaps, very significant, that the words of the St. of 1846, *c.* 167, §§ 12, 13, are, that the court may appoint commissioners, and not that it shall appoint them.   These sections, however, provide that the award of the commissioners, on " being returned to the said court, at the then next term thereof for the county of Suffolk, and accepted by the said court, shall be binding and conclusive, for the term of three years," &c. Some judicial power, therefore, the court has over the award before it can become binding, and a case might be stated in the petition, or proved at the hearing, in which the court would not feel imperatively compelled to appoint commissioners, although it were shown that for two successive years there had been a slight excess in the water rates over the expenses of distribution and the accruing interest on the debt.   But as the petitioners do not insist upon maintaining their petition if the payments to the sinking fund were lawful, we do not consider the competency of the evidence offered, or the extent of the discretion which the court might exercise in determining whether commissioners should be appointed, or whether their powers and duties, if appointed, have been modified by any special legislation since the passage of the St. of 1846, *c.* 167.                    *Petition  dismissed.*