THE PEOPLE, *ex rel.* Henry H. Hathorn and others, *vs.*
JOHN H. WHITE.

By an act of the legislature, the trustees of a village were authorized and
directed to issue the bonds of the village, executed by them, and *signed by
the president of the village,* to a specified amount, bearing an interest not
exceeding seven per cent per annum, which bonds were to be payable within
thirty years, the interest to be paid semi-annually; and the avails of such
bonds were to be used for the purpose of supplying the village with water.
A form of bond having been adopted by the trustees, they resolved to pro-
. ceed, and execute and deliver to the commissioners of construction, bonds
of different denominations, to the amount of $25,000. Bonds so prepared,
with interest coupons attached, in the form required by the act, having been
signed by the trustees, were presented to the defendant, who was president
of said village, for his signature, who refused to sign such bonds and coupons.
*Held* that a mandamus would lie to compel the defendant to sign said bonds
and the coupons attached.
One who accepts an office under a village charter, in which there is a reserva-
tion of the right to amend, takes the office and becomes liable to perform
all its duties, subject to the right of the legislature to amend the charter by
imposing new duties upon the incumbent.
And although he is under no compulsion to continue to hold the office, with
its additional duties, yet his continuance therein after the imposition of new
duties, by an amendatory act, subjects him to the liability to perform them,
and estops him from refusing to perform the duties thus imposed.
His performance of the duties of the office, after the going into effect of the
new act, is an implied acceptance of the office with its new duties.

THIS is a motion for a peremptory mandamus against
the defendant, who is president of the village of Sar-
atoga Springs, to direct him, as such president, to sign
certain bonds of said village and the coupons annexed,
which bonds have been prepared by the trustees of said
village, under the provisions of an act of the legislature,
passed 21st April, 1869, entitled "An act to amend the
charter of Saratoga Springs, passed May 26, 1865, and for
the purpose of securing a supply of pure and wholesome
water for the use of said village."

*C. S. Lester,* for the motion.

*L. B. Pike* and *Wm. Hay,* for the defendant.

---

The People *v.* White.

---

PoTTER, J. The act of 1869 authorizes and directs the six trustees of Saratoga Springs, or a majority of them, to issue the bonds of said village, executed by them or a majority of them, and signed by the president of the village and countersigned by the clerk of the village, to the amount not exceeding $100,000, which shall bear interest not exceeding seven per cent per annum, and payable at some time within thirty years from the sale thereof, such interest being paid semi-annually. The avails of said bonds to be used for the purpose of furnishing a supply of pure and wholesome water to the inhabitants of said village, and for the purpose of extinguishing fires therein. So many of the bonds as should be required for the purposes of said act, the said trustees were directed to deliver to the commissioners of construction therein appointed, who are the relators on this motion.

These commissioners, the relators, have called upon the said trustees of Saratoga Springs to deliver to said commissioners a portion of the bonds authorized by the said act, for the purpose of enabling said commissioners to carry out the objects and purposes of the act. It appears that on the 3d day of May, 1869, at a meeting of the board of trustees, regularly held, they appointed one of their number to prepare the form of a bond to be issued by them. An instrument was prepared, in obedience to such direction, bearing the form of what is called government bonds, with coupons attached; and afterwards, on the 8th day of May, then instant, at another regular meeting of the said board of trustees, at which the defendant was present, presiding, the form of a bond and coupons attached was presented for the action of said board of trustees, and was examined by them and by the defendant; and the said form was accepted and adopted without dissent expressed by any one of said board or by the defendant; and the said board of trustees then resolved to proceed forthwith and execute and deliver to the said commissioners of construction

$25,000 in bonds of the denominations of $1000, $500, $200 and $100. The so-called bonds were printed in the proposed form, to which all of the said trustees affixed their signatures, and they then were given to the village clerk, in the office of the said board of trustees, and in the presence of the defendant; and the said clerk was then requested to complete them according to the resolution of the board, which resolution prescribed the times of their payment, which times were within the said period of thirty years. That the only blanks in said bonds necessary to be filled by the said clerk were that of the year in which they should severally become due, and the day of the month of their date. The said bonds and coupons, as so prepared, were presented to the said defendant for signature in May last, with a request that he sign the same. The commissioners of construction mentioned in the said act have performed the preliminary duty of examining the sources for the supply of water, investigated the expense of different methods, and have incurred some expense therefor; and they show that before they can proceed further, it has become necessary for them to have the required bonds, to enable them to discharge their duties; and that a supply of water is greatly needed by the citizens of the said village, and that they are obstructed in carrying out the provisions of the law by the refusal of the said defendant, as president of the said village, to give the proper authentication of the said bonds, by his signature to such bonds and the coupons attached. The defendant interposes various objections to the performance of the acts required of him, which we proceed to notice. Though he does not deny his omission to sign the bonds at first, and that when called upon on the 22d of July, 1869, by one of the commissioners to obtain them, he informed him they were not ready, and that he did not know when they would be ready; yet he states that he did actually sign the bonds on or before 2 o'clock of the 26th day of July; but has not

signed the coupons, and still declines to sign such coupons, for the reasons specified in his affidavit.

The defendant's first reason for the refusal was, that he was of opinion that the said bonds were not prepared as required by law; that he would sign no bonds or coupons annexed to them so as to make himself liable; nor, unless the bonds were such as the law required him to sign. In looking at the prepared form of bond and coupon, there can be no reasonable pretense of individual liability to the defendant by the execution of either bond or coupons annexed. So far as this was an objection it was groundless. If the bonds were not such as the law required him to sign, his objection was doubtless good. This is the real question in issue, and its determination is all that is to be decided. It is true, as he claims, that he had no right, though present, to interfere with the action of the board of trustees in fixing the form, date or amount of bonds to be issued; and, as he declares that he has always been ready and willing to sign any bonds the law required him to sign, we have but to examine the legality of the objections presented by him. The first objection of this kind is, that when the bonds were presented to him they were not fully filled out with the name of a payee. This objection is of no force; there was no law requiring the name of a *payee* therein. They were good without the name of a payee. The designation of bearer, which was in the bond, was sufficient to make them valid. 2d. The argument of the defendant in his affidavit as to the motives of the relators, or of any of them, in regard to the reasons for adopting the particular form of bond with coupons attached, presents no reason for his refusal to perform the act required. Whatever may be the motives that controlled one or all of the said trustees, the defendant was possessed of no power to control or regulate their action in that regard, and of course could not place his refusal to act upon that ground. The character of the duty which the act required

should be performed by the defendant was not judicial; he possessed no power to judge of, or to direct, or to control it, or to refuse the performance of any official duty devolving upon him. If the paper presented to him for signature was such a one as is contemplated by the law, his only duty was to obey, and to execute it. This brings us to examine the only real question in the case: Was the instrument presented to him for signature such an instrument as it was his duty to execute, or, as comes within the meaning and intent of that statute? Must it be a perfect bond when presented to him for signature? If no other definition of a bond can satisfy the law than such as is in strict accordance with the technical common law definition of a bond, to wit, "an instrument under seal," still this is no objection that the defendant can interpose to the performance of his duty. The seal, if necessary, was not to be his private seal; it could only be the corporate seal of the board. There was no resolution, so far as it appears, that he should execute it by such corporate seal. There is no law requiring the instrument to be a perfect bond when it shall be presented to him for signature. His signature is only one of the preliminary steps in the progress of perfecting the bond; and it does not lie with him to obstruct the progress towards its perfection; it is only required to be a bond when issued to the commissioners of construction. *Non constat,* the trustees will not make it a perfect bond before it is delivered to the commissioners of construction. It is the legal duty of the defendant to aid them in carrying out the directions of the statute and in performing the preliminary steps; and it is no part of his duty to dictate or prescribe the order of this performance of their duties; nor can he refuse to perform his duties, so long as it appears that they have not transcended their powers. His duties call for the exercise of no discretion or judgment, when the trustees are thus acting. His name is of no other importance than as the evidence

The People *v.* White.

of authenticity required by statute. This signature doubtless was regarded by the legislature as a safe check or guard against over-issues of bonds, and perhaps for other reasons, that we need not inquire into; certain it is, they did not express the intent that he should control the action of the board of trustees. The only question in the case that I regarded on the argument, as casting doubt about the power of the court to enforce action on the part of the defendant, was as to the signature of the coupons attached to the said bonds. More reflection has removed that doubt. These coupons are a part of the bond; they are the token, or evidence to the holders, of the right to the amount of interest expressed upon the face of the bond, and which interest is an incident of the bond. The bond, as the statute allows, may draw interest at the rate of seven per cent per annum. These bonds, with their coupons, are nothing but the bond with interest, and together they represent no greater sum, and create no greater liability against the corporation, than if the coupons were not added. If these coupons were printed in the body of the bond, instead of at the bottom, and by the terms of the bond were to be canceled in their order as they became due, the defendant could have made no objection to the form of the bond, for with the form he has nothing to do or direct. If it was a bond, or was capable of being made one by the trustees, before delivery, it was his duty to sign it. If the bond had required but two signatures, one to pay the principal at maturity, and the other to pay the interest as it became due, it would still be a bond, varying only from the usual form of a common money bond in that regard. The principal and interest constitute but one bond, whatsoever may be the form. That the sums coming due for interest should be separately certified does not make it any less a bond. Governments and corporations in the march of intelligent improvement have adopted new forms of legal obligations, more convenient, more suitable, and

better adapted to the wants and necessities of the age in which we live; and by common consent the universal cognomen of such obligation now given them, is bonds; they are declared to be bonds. by statute, and they constitute the great proportion of commercial moneyed capital of the country. Government bonds differ but in the slightest respect from the instruments in question. I think the criticism upon this obligation, if the defendant had a right to make it, is not sufficient for its condemnation.

The only remaining argument of the defendant, that I regard necessary to notice, is that the act in question has been passed since his election to the office he holds, and that it imposes on him new and onerous duties without compensation; that his labor and services are private property which cannot be thus taken from him. The act in question is an amendment of the charter of the village, under which he was elected to the office he holds. The right and authority to amend it was in the legislature; the amendment, when made, becomes a part of the original act. The defendant accepted his office and became liable to perform all its duties, subject to the right of amendment of the charter by the legislature, imposing new duties. The charter, before amendment, makes it his duty "to do such acts and things as may be proper for him as president of the village." The act of 1869, which relates to the public interests of the village, becomes mandatory to him when it calls upon him to execute such bonds as a majority of the trustees of said village are directed to issue for the purpose therein specified. He is under no compulsion to continue to hold the office with its onerous duties, but his continuing to hold the office after the imposition of new duties by the act in question, subjects him to the liability to perform them, and estops him from refusing to perform the duties thus imposed. His performance of the duties of the office

The whole case is briefly summed up in this: The new act authorized and directed the six trustees of the village, or a majority of them, to issue bonds for the purpose specified, to be signed by the president. The exercise of this power by the trustees was the exercise of a *quasi* judicial power, limited only by the amount of bonds to be issued and the time they should run; it directed nothing as to the form or manner of their issue. By the well known rules and principles of construction of statutes, all things not expressed in the statute, but necessary to the carrying it into effect as needful or requisite to attain the end and object of the statute, is given by implication; and whenever the statute imposes a duty, the common law always provides the means of enforcing it. I have not been able to see, in the objections interposed by the defendant, a sufficient reason for his refusal to sign the bonds in question, which I hold includes the attached coupons.

The writ of mandamus may therefore issue.(*a*)

[SCHENECTADY SPECIAL TERM, August 10, 1869. *Potter*, Justice.]

(*a*) Affirmed at the SARATOGA GENERAL TERM, November 9, 1869. *Bockes, Rosekrans* and *Potter*, Justices.