STATE OF MINNESOTA *ex rel.* Minneapolis Tribune Company *vs.*
A. A. AMES, Mayor.

January 24, 1884.

**Minneapolis—Mayor and Council—Appropriations.**—By the charter of
the city of Minneapolis (Sp. Laws 1881, *c.* 76) the making or authorizing
of appropriations is exclusively vested in the common council, and the
mayor has no veto of the action of the council in making or authorizing
the same.

**Same—Duty of Mayor to Sign Order for Payment of Claim—Manda-
mus.**—A claim against the city, of a class for the payment of which the
council is empowered to make an appropriation, having been first audited
and adjusted by the comptroller, and an appropriation for its payment
made and authorized by the requisite and duly-recorded vote of the council,
when an order for its payment, in due form, and duly signed by the clerk,
is presented to the mayor for his signature, it is his duty to sign it within
such reasonable time as may be necessary for him to ascertain whether
the council has kept within its jurisdiction, and whether the appropria-
tion has been authorized by the necessary vote. Upon the refusal so to
sign an order, he may be compelled to sign by *mandamus*.

*Mandamus.* The relator presented to the common council of Min-
neapolis a bill for printing and publishing. The council duly author-
ized payment of the bill, and directed the city clerk to draw an order
for the amount on the city treasurer. The city clerk thereupon drew
the required order and presented it for signature to the respondent,
A. A. Ames, then mayor of the city. The respondent having refused
to sign the order, an alternative writ of *mandamus* was issued, on the
petition of the relator, by the district court for Hennepin county. On
the return of the writ, the respondent answered, and the relator
moved that a peremptory writ be allowed notwithstanding the an-
swer, which motion was granted by *Lochren,* J., and an order entered
accordingly. From this order, respondent appeals.

*J. W. Cochran,* for appellant.

*C. H. Benton,* for relator.

BERRY, J.[1] The charter of the city of Minneapolis (Sp. Laws 1881,

[1] Gilfillan, C. J., because of illness, took no part in this case.

*c.* 76,) contains the following provisions: "No appropriation shall be made without a vote of a majority of all the members of the city council in its favor, which shall be taken by ayes and nays, and entered among the proceedings of the council." Subchapter 4, § 11, p. 440.

"No money shall be paid out of the city treasury, except for principal or interest of bonds, unless such payment shall be authorized by a vote of the city council, and shall then be drawn out only upon orders signed by the mayor and clerk, and countersigned by the comptroller, which orders shall specify the purpose for which they were drawn, and the fund out of which they are payable, and the name of the person in whose favor they may be drawn, and may be made payable to the order of such person or to the bearer, as the city council may determine." Subchapter 5, § 22, p. 449.

These are all the provisions which we find in the charter as to by whom appropriations are to be "authorized" or "made." In effect, they vest or imply the vesting of the power to authorize and make appropriations in the city council alone. They confer no right or duty upon the mayor or any other officer or branch of the city government to take part in the making or authorizing of appropriations. And it follows that, unless they are controlled by other parts of the charter, the power to make or authorize appropriations is exclusively vested in the council. From this it would follow that the signing of an order by the mayor is not required for the purpose of making or authorizing an appropriation, that purpose having been fully accomplished by the council before the order is presented to the mayor. And it would further follow that in any case in which the council makes or authorizes an appropriation, having jurisdiction so to do, it is the duty of the mayor to sign the order issued in pursuance thereof, without inquiring whether the appropriation was wisely or properly made or authorized, or not.

It does not follow, however, that the mayor is to sign every order which may be presented to him. He has the right, and it is his duty, to inquire whether the "claim" or "demand" for the payment for which the appropriation is made has been "audited and adjusted" by the comptroller before being allowed by the council, as required by sec-

tion 18, subchapter 3, of the charter. Also to inquire whether the claim or demand is of a class for payment of which the common council has authority to make an appropriation. He may, also, and as a very proper check upon the clerk, inquire whether the records of the council show that the appropriation has in fact been authorized by the majority vote required by subchapter 4, before quoted from the city charter. See *People* v. *White*, 54 Barb. 622, 626, 627. All these things properly fall within his general duty to "take care that the laws of the state are enforced," (one of which is the city charter,) and that "all other officers of the city discharge their respective duties." Subchapter 3, § 1, p. 423.

In the two cases first mentioned, his right of inquiry is as to the *jurisdiction* of the council. In the third, it is as to the *fact* of the authorization of the appropriation; and if he finds that the jurisdiction or authorization is lacking, he may properly withhold his signature. *State* v. *Mayor of Newark*, 35 N. J. Law, 415. But, unless we have overlooked some provision of the charter to the contrary, his duty as mayor in signing orders, except as above indicated, is purely ministerial. A claim, of a class for the payment of which the council is empowered to make an appropriation, having first been audited and adjusted by the comptroller, and an appropriation for its payment made and authorized by the requisite and duly-recorded vote of the council, when an order for its payment, in due form and duly signed by the clerk, is presented to the mayor for his signature, it is his duty as mayor to sign it within such reasonable time as may be necessary to enable him to make the inquiries before indicated, as to whether the council has kept within its jurisdiction, and whether the appropriation has been authorized by the necessary vote. *Ahrens* v. *Fiedler*, 43 N. J. Law, 400; *People* v. *Lawrence*, 6 Hill, 244.

But in opposition to the views above expressed, and as showing that the mayor has a *veto* upon the action of the council in making appropriations, and therefore cannot be compelled to sign orders upon the treasury to carry out such appropriations, the defendant's counsel cites several provisions of the charter.

And, *first*, a provision that "all ordinances and resolutions shall, before they take effect, be presented to the mayor" for his approval or

disapproval. For at least two reasons we think this citation inapplicable. *First,* there is nothing in the charter requiring an appropriation to be made by ordinance or resolution. Again, the mode of appropriation is governed by the charter provisions before quoted from subchapter 4, § 11, and subchapter 5, § 22. These are special provisions upon this special subject, and therefore controlling. They provide for the making of appropriations by the council alone. Defendant's counsel further cites section 3, subchapter 3, of the charter, requiring the city clerk to "draw and sign all orders on the treasurer, in pursuance of any order or resolution of the city council." P. 425. His argument is that "order" and "resolution" are here synonymous, and therefore both mean "resolution." We see no reason why it might not be urged with equal propriety that both mean "order." But, irrespective of mere verbal criticism, it is enough that the order or resolution which the clerk is to sign is that of the city council, not of the council and mayor.

We are also referred to section 9, subchapter 4, of the charter, (p. 439,) which requires all ordinances and resolutions of the council to be passed by an affirmative vote "of a majority of all the members" thereof, just as the section before quoted requires appropriations to be authorized by a like vote. The argument is that on account of this analogy the making of an appropriation is, or stands upon the same footing as, the passage of an ordinance or resolution. This appears to us a clear *non sequitur*.

In our opinion, after due consideration of the positions and argument of counsel, the mayor's veto is wholly inapplicable to the action of the council in making appropriations; and section 1, subchapter 3, in directing him "from time to time to give the city council such information, and recommend such measures, as he may deem advantageous to the city," (p. 424,) has, in our judgment, no reference to his duty when called upon in a proper case (as we have before indicated it) to sign an order upon the treasurer.

This disposes of the main questions arising upon the merits, and brings us to certain points of pleading and practice raised by defendant, and which may be disposed of with comparative brevity.

This was a proceeding in the district court of Hennepin county by

alternative *mandamus,* to obtain a peremptory *mandamus* compelling the defendant, as mayor of Minneapolis, to sign an order drawn and signed by the city clerk in pursuance of a duly-authorized appropriation by the city council, of money in the city treasury, to pay a claim of relator for city printing under a contract therefor.

*First.* The writ alleges (though somewhat informally) that the relator is a corporation. As, notwithstanding a species of argumentative denial, the answer fails to "*expressly aver*" that the relator is not a corporation, the relator is not (as defendant suggests) required to prove its corporate existence. Gen. St. 1878, *c.* 66, § 112.

*Second.* The writ alleges that the "payment" for which the order in question was drawn, was "duly authorized" by the city council. This is good pleading. It states the legal effect of the council's action, without unnecessarily incumbering the record with the details of its proceedings in the premises.

*Third.* It was not necessary to plead specially the particular provision of the charter which made it the defendant's duty to sign the order. Section 16, subchapter 11, enacts that "this city charter shall be a public act, and need not be pleaded nor proved in any case." As with regard to public laws in general, so here it is enough to set forth the facts upon which the law raises the duty.

*Fourth.* Finally, it is contended that the writ of *mandamus* does not lie in a case of this kind, because there is a plain, speedy, and adequate remedy in the ordinary course of law. Gen. St. 1878, *c.* 80, § 3. We do not agree to this. Upon the allegations of its writ, the relator is entitled to have the order for its payment signed by the defendant without delay, and, as there are funds in the treasury for its payment, and it is to be presumed that the comptroller and treasurer will each do his duty promptly, the result would be that the relator would get its money without delay. We see no reason why, upon the refusal of the mayor to sign the order, the petitioner might not sustain an ordinary civil action against the city for the money due it. See *Guilder* v. *Town of Otsego,* 20 Minn. 59, (74;) *People* v. *Flagg,* 16 Barb. 503; *Buck* v. *City of Lockport,* 6 Lans. 251. But, upon recovering judgment, it would be necessary for it to present its claim to the comptroller and the council, and obtain an appropriation

for its payment upon an order which must be signed by the mayor, or to wait until a tax could be levied to pay it under section 37, subchapter 5, of the charter. As compared with the remedy by *mandamus* sought in this case, such a remedy would certainly not be speedy, (*Ahrens* v. *Fiedler*, 43 N. J. Law, 400;) and it would not be adequate, because it would not afford the relator the particular right which the law accords him, viz., to have a properly authenticated order or warrant upon the treasurer as an evidence of indebtedness, and as a means of securing prompt payment of his claim out of the funds in the city treasury. *Ahrens* v. *Fiedler, supra; Apgar* v. *Trustees of School-dist.*, 34 N. J. Law, 308; *Dunley* v. *Whiteley*, 14 Ark. 687; High, Ex. Rem. § 17.

In addition to these considerations, the right of the relator to the writ is supported by abundant authority. Where, as in this case, a demand against a municipal corporation has been duly audited, allowed, and ordered paid, and the proper officer refuses to perform the purely ministerial act of drawing, signing, or sealing a proper warrant in the premises, it is common practice to compel him to do so by *mandamus*. *McCullough* v. *Mayor of Brooklyn*, 23 Wend. 458; High, Ex. Rem. §§ 104, 105, 107, 351, 356, and citations. This is also evidently the theory of our statute, which provides that *mandamus* may issue to any person to compel the performance of an act which the law specially enjoins as a duty resulting from an office. Gen. St. 1878, c. 80, § 2.

Order affirmed.