STATE ex rel. SAMUEL TREBBY v. CHARLES E. VASALY.[1]

May 11, 1906.

Nos. 14,531—(40).

**City Official—Extra Service.**

> While a city official cannot require extra pay for, services rendered by him for which compensation by way of salary is allowed by law, he may recover for other services which he may render outside of and in addition to his ordinary official duties, which can be as well performed by any other person as by him.

**Bill of City Attorney.**

> In this case, a bill, expressly for such outside and additional services rendered to a municipality by a person who was at the time city attorney, was duly presented to the city council at a proper meeting and was ordered paid by it. A charge of fraud is suggested but was not alleged in the proceedings, nor was any request made to the court to find with respect to it. It was formally claimed that, while the vote of the council

[1] Reported in 107 N. W. 818.

was honest, the bill was a subterfuge to enable the claimant to receive the money as salary for city attorney. The findings of the court that it was for services are *held* sustained by the evidence.

**Mandamus.**

It was the duty of the mayor to sign the order presented to him by the city clerk pursuant to the action of the council requiring the city treasurer to pay the claimant for his additional services. To compel the performance of that duty, mandamus lay. State v. Ames, 31 Minn. 440, followed and applied.

Proceeding in the district court for Morrison county, upon relation of Samuel Trebby, for a writ of mandamus requiring defendant as mayor of the city of Little Falls to authenticate a city order for $250 drawn in relator's favor. The case was tried before Baxter, J., who found in favor of relator. From a judgment entered pursuant to the findings, defendant appealed. Affirmed.

*Donat Trettel* and *J. N. True,* for appellant.

*Stewart & Brower* and *Lindbergh & Blanchard,* for respondent.

JAGGARD, J.

An alternative writ of mandamus was issued to the mayor of the city of Little Falls, reciting the organization of that municipal corporation; that the respondent was the acting mayor; that the relator was a resident and taxpayer and legal voter of the city; that between April 1, 1899, and February 5, 1900, the relator rendered services for the said city in preparation for and the trial of an equitable action in the Circuit Court of the United States, in which the city and members of the council were defendants, at the special instance and request of the council; that the same were reasonably worth $250; that by a motion unanimously carried the city council ordered the same paid; that thereupon the city clerk prepared for the signature of the mayor an order requiring the city treasurer to pay the relator the sum of $250 for the said services; that the said order was signed by the clerk, had the corporate seal of the city duly affixed thereto; that the mayor refused to sign the same. There were the usual formal allegations and a prayer that the mayor be required to sign the same or show cause.

On the return the mayor admitted various allegations; denied some

others which were subsequently admitted, as will presently appear. The return further alleged that the relator, although not admitted to practice as a lawyer, had been appointed city attorney by the city council; that no salary was at any time designated for him as city attorney; that in 1899 a motion was properly carried by the city council appropriating $200 to defray expenses in the suit referred to in the petition, and that an order was drawn in the sum of $200 in payment of the same; that the relator received the said order; that the relator had submitted no statement of the expenses in said suit; that the said sum of $200 was received by the relator, although he had rendered no services of value. In addition to the plea of payment thus referred to, the gist of the return is in paragraph 15, which is as follows:

> Defendant further alleges that the presentation by relator of his so-called bill for services rendered, $250, and the allowance thereof by said city council was not for the purpose of paying relator for services rendered, but was a makeshift and subterfuge resorted to by relator and said city council solely for the purpose of enabling relator to receive such sum of money as a salary for city attorney.

The defendant thereupon prayed that the writ be dismissed, and that he have his costs and disbursements.

To this there was a formal denial. It was afterwards stipulated in the trial court that the action be continued against the then mayor, and upon argument in this court it was further stipulated that the action be continued as against the present mayor. On trial it was also stipulated that at a regular meeting of the city council, on February 5, 1900, Trebby presented his bill for "services rendered"; that a motion was duly made and seconded and unanimously carried allowing said bill in the sum of $250; that thereupon the city clerk presented to the mayor for his official signature an order in proper form on the city treasurer, requiring him to pay relator or order the sum of $250, in payment of the bill referred to; and that the mayor refused and continues to refuse to sign the same. Upon testimony then taken, the court made findings of fact and conclusions of law for the relator. From a judgment then entered this appeal was taken.

The assignments of error, while deficient in many technical respects, sufficiently present for determination by this court the merits of the controversy. The law does and should scrutinize with circumspection and care expenditures of public funds and charges of fraud, mistake, or of any form of wrong on the part of any public body or official resulting in their misappropriation. While it is probable that in this case the mayor at the time the resolution was passed was given power to veto it, the suggestion of misconduct on the part of the relator and of consequent wrong to the city is entitled to careful consideration. The appellant and defendant insists that the relator, though not an attorney, rendered the services in question in pursuance of his duties as city attorney, and that "the allowance thereof by said city council was not for the purpose of paying relator for services rendered, but was a makeshift and subterfuge resorted to by relator and said city council solely for the purpose of enabling relator to receive such sum of money as a salary for city attorney."

The court, upon sufficient evidence, found as a matter of fact that

> The said services were not rendered by him [the relator] as, and were not contemplated by his election and retainer as, such city attorney, and were not services required to be done by him as such city attorney, nor were they within the meaning of the statute prescribing and defining the duties of said city attorney of said city of Little Falls.

There is no reason why this court, under the familiar rule on the subject, should disturb this finding of fact by the trial court. It is elementary that, while a public official cannot require extra pay for services rendered by him for which compensation by way of salary is allowed by law, he may recover pay for other services which he may render outside of and in addition to his ordinary official duties which could as well be performed by any other person as by him. U. S. v. Brindle, 110 U. S. 688, 4 Sup. Ct. 180, 28 L. Ed. 286; Converse v. U. S., 21 How. 463, 16 L. Ed. 192; Tiedeman, Mun. Corp. 121; U. S. v. Saunders, 120 U. S. 126, 7 Sup. Ct. 467, 30 L. Ed. 594; Evans v. Trenton, 24 N. J. L. 764; Burroughs v. Board, 29 Kan. 196; Mayor v. Muzzy, 33 Mich. 61, 20 Am. 670; Reif v. Paige, 55 Wis. 496, 13

98 M.—4

N. W. 473, 42 Am. 731; and see authorities referred to in Young v. City of Mankato, 97 Minn. 4, 105 N. W. 969.

The return to the alternative writ did not affirmatively allege that there was fraud, on the part of the relator or otherwise, in the transaction. There was no request that the court find with respect to fraud or anything equivalent thereto or in the nature thereof. The defendant and appellant in his own language seeks to "prevent the relator from accomplishing the trap he had set and perverting the honest vote of the council."

There was testimony that a regular practicing lawyer, whom the appellant describes as a "reputable and able attorney," stated to the council that there was work to be performed in looking up the records of the litigant opposed to the city in the United States Circuit Court, the length of wire, the amount of pipes laid in the ground, and the like; that it would effect a saving if the relator did the work; and that relator did the work in pursuance of the request of members of the council. Some members of the council testified that the appropriation of $250 was for ten months' salary, and not for extra work. Another member of the council substantially contradicted their testimony, and his bill, which on its face expressly purported to be for "services rendered," spoke for itself. Under such circumstances there was no issue of fraud presented which would justify the refusal of the present mayor to sign the order of the council.

So far as the fact that the defendant was not an attorney at law is concerned, it was settled in State v. Nichols, 83 Minn. 3, 85 N. W. 717, that this relator was entitled to his salary, although he was not a duly admitted attorney under the findings of the trial court. The additional services for which the order was drawn were not only outside of his duties as city attorney, but they were not legal services at all, and could have been rendered by any layman sufficiently expert in the questions involved in the United States Circuit Court. In Horn v. City of St. Paul, 80 Minn. 369, 83 N. W. 388, to which the appellant refers, the services for which the city of St. Paul was held not responsible were legal services. So in True v. Board of Co. Commrs. of Crow Wing County, 83 Minn. 293, 86 N. W. 102, also cited by appellant, it was held that an unauthorized employment of counsel by a

sheriff to conduct litigation in behalf of his county, though invalid and not binding on the county, might be ratified by the board of county commissioners, but no ratification could take place except by some official action taken by them with reference to such employment. In the case at bar the council, as an official body, at a regular meeting ratified relator's employment by directing the payment of his claim.

The court's finding that the claim was not paid was sufficiently sustained by the evidence, and, in view of what has before been said in this opinion, properly eliminated that defense. It is well settled, as by State v. Ames, 31 Minn. 440, 18 N. W. 277, that "a claim against the city, of a class for the payment of which the council is empowered to make an appropriation, having been first audited and adjusted by the comptroller, and an appropriation for its payment made and authorized by the requisite and duly recorded vote of the council, when an order for its payment, in due form, and duly signed by the clerk, is presented to the mayor for his signature, it is his duty to sign it within such reasonable time as may be necessary for him to ascertain whether the council has kept within its jurisdiction, and whether the appropriation has been authorized by the necessary vote. Upon the refusal so to sign an order, he may be compelled to sign by mandamus." The rule in that case determines the decision of this case.

The appellant's assignments of error raise some other questions, all of which have been fully examined and considered. None of them result in showing reversible error in the rulings of the trial court.

Judgment affirmed.