AMERICAN ELECTRIC COMPANY v. CITY OF WASECA and Another.[1]

November 15, 1907.

Nos. 15,290—(57).

**Water and Light Board.**

The water and light board of the city of Waseca is, under the provisions of the charter of the city, clothed with the exclusive superintendence, control, and management of the city water and light plant, and authorized to enter into such contracts for and on behalf of the city, within the limitations contained in the said charter, as the members thereof deem for the public interests.

**Same.**

The mayor of the city is not a member of the board, nor has he authority, under the charter or otherwise, to cancel or rescind a contract duly made by the board within the scope of its authority.

**Same—Right to Sue.**

Though the board is but an agency of the city, it may, under the provisions of the charter, sue and be sued, and this action was properly brought against it.

[1] Reported in 113 N. W. 899.

**Limitation on Indebtedness.**

    The provisions of sections 1095 and 1639, G. S. 1894, limiting the indebtedness of municipal corporations to five per cent. of the assessed valuation of taxable property do not apply to the city of Waseca.

**Same—Defendant's Charter.**

    The provisions of the charter enacted under chapter 238, Laws 1903, limiting the indebtedness to ten per cent. of the assessed valuation of taxable property, supersedes the provisions of the general statutes, and the limit by which the city is controlled is that fixed by the charter.

**Evidence.**

    Evidence *held* to support the verdict for plaintiff.

Action in the district court for Waseca county to recover $2,600 for apparatus and machinery shipped to and received by the defendant. The case was tried before Buckham, J., who dismissed the action as to defendant City of Waseca and directed a verdict for $2,500 and interest against defendant Water and Light Board of the City of Waseca. From an order denying its motion for a new trial, defendant Water and Light Board of the City of Waseca appealed. Affirmed.

    *P. McGovern* and *John Moonan,* for appellant.

    *Thomas McDermott* and *C. Louis Weeks,* for respondent.

BROWN, J.

In May, 1904, the city of Waseca adopted a "home rule" charter, under and pursuant to chapter 238, p. 349, Laws 1903, and has since been governed and controlled by the provisions thereof. The charter deals minutely with subjects appropriate to municipal control, and, among other things, created a "water and light board of the city of Waseca." The general duties of the board are prescribed, and to it are committed the superintendence, care, and control of the city water and lighting plant. The board was expressly authorized to extend the plant, by purchasing such new and additional machinery and appliances as the members thereof deemed necessary for furnishing light for city and commercial purposes. With reference to the duties of the board the charter provides: "All contracts, engagements, acts and doings of said board within the scope of their duties and authority, shall be as obligatory and in law as binding as if done by the common council of said city." Subsequent to the adoption of the charter, this board was duly and regularly appointed by the mayor, and the

members thereof duly qualified and entered upon the discharge of their duties. On September 27, 1904, the board entered into a contract with plaintiff in this action, under and by the terms of which plaintiff agreed to furnish and deliver to the board at the city of Waseca certain equipment, apparatus, and machinery for the extension of the city's light plant, the purchase price of which was $3,700. Plaintiff complied with the contract and shipped the material to the board at Waseca, a portion of which was received and accepted by the board and has never been returned. A dynamo, part of the machinery so contracted to be sold, was not shipped at the time of that which was received and accepted, but at a later date. About the time of the shipment of the dynamo a controversy seems to have arisen between the water and light board and the mayor or city council with reference to the propriety of the proceedings by the board, and an injunction suit was brought restraining the further performance of the contract. The dynamo referred to remained at the railroad station during this time; the board being unable to accept it because of the injunction. It was subsequently returned to plaintiff and sold to other parties with the consent of the board; plaintiff agreeing to furnish a new one when the controversy at Waseca should cease and the board should order it. Plaintiff made due demand for payment for the material furnished and accepted by the board, which the city refused to make, whereupon this action was brought against the board and also the city to recover the value thereof. The evidence shows that the property received by the board was reasonably worth $2,500. The trial court dismissed the action as to the city, but directed a verdict against the board for the value of the material so received and accepted. The defendant board appealed from an order denying a new trial.

Three principal contentions are made by the defendant: (1) That the contract under which plaintiff shipped the property to defendant was, before the shipment, rescinded by the mayor of the city; (2) that the action cannot be maintained against the water and light board, for the reason that it is a mere agency of the city, incapable of being sued for goods sold to it for the use of the city; that the action could be brought only against the city; (3) that the liability created by the contract upon which the action is founded exceeded the statutory limit

of indebtedness authorized to be incurred by the city, and the contract was therefore wholly void.

1. We find no special difficulty in disposing of these questions. The charter of the city of Waseca, like all modern municipal charters, proceeds along the line of distributing the burden of municipal affairs among different departments, relieving in a large measure the city council, the legislative body, and the mayor, the chief executive officer, from the details of many of its proprietary affairs, and casting the whole burden of responsibility for specific duties upon boards created for the purpose. The water and light board was by the charter given entire control, supervision, and management of the city water and light plant, and was expressly empowered to extend and improve the same; and the authority so conferred is followed by affirmative declaration that all contracts, engagements, acts, and doings by the board, within the line of its duty, shall be as obligatory and in law as binding as if done by the common council. This can mean but one thing, and the intention of the framers of the charter is clear, and that is that the water and light board was authorized, acting by itself, and independently of the common council, or mayor, to make all such contracts within the authority conferred as public necessity required, and that contracts so made should be valid and binding against the city. The mayor is not a member of the board, nor is he given any supervisory control over the conduct of its affairs. The sole authority and responsibility, within the limits prescribed by the charter, rests with the board, and the mayor has no power of veto, or right to cancel or rescind contracts made by it. State v. Ames, 31 Minn. 440, 18 N. W. 277. The power of veto is not inherent in the office of mayor of a municipal corporation, or other chief executive officer. It exists only when expressly conferred by law, and does not arise by implication. No such power is conferred upon the mayor of Waseca in respect to transactions by the water and light board, and we are clear that his attempted cancellation of the contract here in question was a nullity.

2. In connection with the authority so conferred upon the water and light board, it was evidently deemed proper to vest the board with power, also to prosecute and defend all actions, arising from the regular transaction of its business. The charter provides that the

board may sue and be sued, plead and be impleaded, answer and be answered unto, and appear and prosecute actions to final judgment in any court, in the name of the board. The purpose of this provision was to render complete the authority of the water and light board with reference to the duties imposed upon it, and to require it to conduct all litigation with respect to its transactions, relieving other officials and other departments of any responsibility in connection therewith. These provisions are so plain and explicit that extended discussion is hardly required. The case is wholly unlike those cases wherein no express authority is conferred upon boards of this character to sue and be sued. Though a board of this kind is a mere agency of the municipality, and without express legislative enactment actions could not be maintained by or against it, where express authority to sue and be sued is given, the question is removed from doubt. Morton v. Power, 33 Minn. 521, 24 N. W. 194. The water and light board is, of course, a mere agent of the city. The municipality can act only through agents. But it is expressly authorized to conduct litigation connected with the conduct of the affairs committed to its control. We so hold, without further discussion of the subject.

We may say, however, in passing, that, if the learned trial court erred in any of its rulings, the error was in dismissing the action as to the city. State v. District Court of Ramsey County, 33 Minn. 295, 23 N. W. 222; Morton v. Power, supra. The contract in question was entered into by the board under express charter authority. The charter provides that such contracts shall be as valid and binding against the city as though entered into by the common council, and, whatever may be the precise method of enforcing a judgment recovered against the board, it is clear that the city must ultimately pay the same. The city was, therefore, a proper, though perhaps not a necessary, party to the action.

3. The claim that the liability created by the contract in question exceeded the limit of indebtedness authorized to be incurred by the city under the general statutes is not well taken. The limit prescribed by sections 1095 and 1639, G. S. 1894, is five per cent. of the assessed valuation of taxable property, while the charter, dealing with the same subject, prescribes a limit of ten per cent. We have held in recent cases that the provisions of home rule charters upon all subjects prop-

er for municipal regulation prevail over the general statutes relating to the same subject-matter, except in those cases where the charter contravenes the public policy of the state, as declared by the general laws, and in those instances where the legislature expressly declares that a general law shall prevail, or a purpose that it shall so prevail appears by fair implication, taking into consideration the subject and the general nature of the charter and general statutory provisions. Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1133; Peterson v. City of Red Wing, 101 Minn. 62, 111 N. W. 840; Turner v. Snyder, 101 Minn. 481, 112 N. W. 868. Chapter 238, Laws 1903, under which Waseca was incorporated, authorizes an indebtedness up to ten per cent. of the assessed valuation of taxable property, and acting upon that authority the framers of the city charter included therein the same limitation. Section 10, c. 5, City Charter. The charter provisions are valid within our decisions, and in any event come within the exceptions embraced in sections 1095 and 1639, G. S. 1894, upon which defendant relies, restricting municipal indebtedness to five per cent., except when otherwise expressly authorized by law. Hamilton v. Village of Detroit, 83 Minn. 119, 85 N. W. 933.

We have fully considered all assignments of error not covered by the foregoing, and discover no reason for reversing the order appealed from; and it is affirmed.