## McClendon v. State ex rel.

### Opinion delivered May 28, 1917.

1. MANDAMUS—PUBLIC OFFICIAL—DISCRETION—OTHER REMEDY.—Mandamus will not lie to control the discretion of an officer where the performance of an official duty involves an exercise of discretion. Mandamus will not lie where the party applying therefor has another and adequate remedy.

2. MUNICIPAL CORPORATIONS—PASSAGE OF ORDINANCE OVER MAYOR'S VETO—DUTY OF MAYOR.—When the city council passes a valid ordinance it becomes binding upon all alike, and where it imposes upon the mayor, or other city officer, any duty which the council has the authority to impose, when the obligation to perform that duty becomes binding, and where the mayor of a city vetoes an ordinance, he has exercised his discretion, and when the ordinance is then passed over his veto, the mayor becomes charged with the performance of a mere ministerial duty, and no officer has a discretion to obey, or to refuse to obey, a law requiring the performance of a mere ministerial duty.

3. MUNICIPAL CORPORATIONS—ORDINANCE PASSED OVER VETO—DISCRETION OF MAYOR.—A mayor has no more discretion, and does not have any more discretion, in obeying an ordinance passed over his veto, than he has in obeying one which was passed with his approval.

4. MUNICIPAL CORPORATIONS—CONTRACT—DUTY OF MAYOR TO EXECUTE—LACK OF DISCRETION.—A city, desiring to enter into a certain contract, the council passed an ordinance directing the mayor to execute the same in the name of the city. The mayor vetoed the ordinance, and it was passed over his veto. *Held*, the mayor had no discretion to refuse to execute the contract.

5. MUNICIPAL CORPORATIONS—DE FACTO OFFICERS—COLLATERAL INQUIRY.—Where aldermen are *de facto* officers, and hold their qualification to serve as such, their right to serve can not be inquired into in a collateral proceeding.

6.  MUNICIPAL CORPORATIONS—MAINTENANCE OF PAVED STREET—
AUTHORITY TO COMPROMISE.—A city street was paved under an im-
provement district, and a maintenance bond given by the contractor.
The bond was executed for the benefit of the city and the improve-
ment district. *Held,* the city council had authority to pass an
ordinance providing a compromise with the contractor and his bond
of the city's claim for repairs due.

Appeal from Garland Circuit Court; *Scott Wood,*
Judge; affirmed.

*Murphy & McHaney,* for appellant.

1. Mandamus will not lie to compel the perform-
ance of a ministerial duty, where any discretion upon
the part of the officer is involved, nor where there is any
other remedy. 118 Ark. 166.

2. The ordinance was not legally passed over the
mayor's veto. Housley and Ledwidge were not residents
of the ward they claimed to represent as aldermen.
Kirby's Digest, §§ 5597-8, 5602; 82 Ark. 529; 66 *Id.* 201;
68 *Id.* 555; 80 *Id.* 369.

3. The city council had no authority to make the
contract, or pass the ordinance for making it, while the
district was still in existence and the improvement still
in the hands of the commissioners. 71 Ark. 4; 94 *Id.*
49; 55 *Id.* 148; Kirby's Digest, § 5643. The district had
never been turned over to the city. 81 Ark. 599. The
movement should have been initiated by the board of
public affairs and the contract let to the lowest bidder.
81 *Id.* 599.

*Martin. Wootton & Martin,* for appellees.

1. Mandamus is the proper remedy. The mayor's
duty was purely ministerial. The ordinance had passed
and he had no discretion as to the performance of a legal
duty. 64 N. Y. 499; 132 N. Y. Supp. 620; 64 Atl. 68; 112
Ga. 160; 131 *Id.* 614; 148 Pa. St. 463; 68 S. W. 15; 26 Cyc.
280-1, 358; 19 Am. & Eng. Enc. Law (2 ed.) 821.

2. It may be true that the council might have ap-
proved the contract without the necessity of the signa-
ture of the mayor, but it provided for the signature of

the mayor, and it was his duty to obey the law, and no discretion was left in him after the passage of the ordinance. 64 Atl. 68; 3 McQuillan on Mun. Corp., § 1179. The council *might* have provided a different method, but they did not; a specific mode was prescribed and the law is binding on all, including the mayor.

3. The ordinance was legally passed. Housley and Ledwidge were at least *de facto* aldermen, and their acts are binding as to third persons and the public. 190 S. W. 427; 55 Ark. 81; 52 *Id.* 356; 43 *Id.* 243; 48 L. R. A. 412; 94 Fed. 457; 136 S. W. 1028; 122 Mass. 445, etc.

4. The council had authority to pass the ordinance. 113 (Ill.) N. E. 703; 97 S. W. 1; 60 L. R. A. 768; 110 U. S. 212; 52 Pac. 28; 92 Wis. 456; 98 Cal. 10. The paving company was not liable on its warranty to repair the streets and a new contract was necessary. Both the city and the commissioners joined in the settlement and had the power to make the compromise settlement. 5 Dill. 498; 75 Neb. 502; 145 Fed. 753; 28 Cyc. 641; 109 U. S. 221, and many others.

5. The city council, and not the Board of Public Affairs, had the power to act. Kirby & Castle's Digest, §. § 6670, 6572, 6734, 6483; 118 Ark. 166, etc.

Smith, J. In 1905 an improvement district was formed for the purpose of paving Central avenue and other streets in the city of Hot Springs. On April 2, 1906, a contract was entered into between the improvement district and the Barber Asphalt Paving Company to pave said streets with asphalt. The paving contract contained a clause whereby the paving company agreed to make certain repairs for a period of ten years after the completion of its contract. The streets were paved, and after a few years' use became out of repair, and the paving company was called upon to make the necessary repairs, which it declined to do upon the ground that it was under no duty to make the repairs which had become necessary.

This controversy was settled by an agreement on the part of the paving company to pay the sum of $7,500 in cash, in consideration of which payment a release was to be executed by both the city and the improvement district; but a controversy arose between the city officials and the commissioners of the improvement district over the disposition of this money, and the required release was never executed and the money was never paid to either—the city or the improvement district. Failing to adjust the matter, a suit was brought by the city against the paving company and the surety on its bond, in which judgment was asked for $30,000. An agreement was reached for the settlement of this litigation, pursuant to which an ordinance was passed, which recited the agreement of the paving company to do certain resurfacing and other repair work in consideration of a sum of money to be paid by the city. This ordinance was passed to effectuate the settlement of the differences between the paving company and the city, and authorized and directed the mayor, in the name of the city, to sign the contract agreed upon. This ordinance, was vetoed by the mayor, and afterwards passed by a vote of eight in favor of the ordinance to two against it, two members of the council not being present at the time.

After the passage of the ordinance over the veto of the mayor, that officer was called upon to execute the contract of settlement there authorized; but he declined so to do. Whereupon a proper petition for mandamus was filed against him, praying that he be required to do so. The relief prayed was resisted upon the following grounds:

1. That the signing of said contract on the part of the mayor involves the exercise of discretion.

2. That appellees have another remedy.

3. That the ordinance providing the terms of the contract was not legally passed and is therefore not a valid and binding ordinance of the city council of said city.

4. That the streets were in the hands of the commissioners of the improvement district and that the city council had no authority to pass the ordinance providing for this contract or to require the mayor to sign it.

(1) Appellant argues, and appellees concede, that mandamus will not lie to control the discretion of an officer where the performance of an official duty involves an exercise of discretion. And the concession is likewise made that mandamus will not lie where the party applying therefor has another and an adequate remedy.

(2) Appellant says that it is now sought, in effect, to compel him to approve an ordinance which, in the exercise of his discretion, he saw proper to veto. We think, however, that such is not the case, for after the passage of the ordinance the discretion of the mayor ceased. Once a valid ordinance is passed, it becomes binding upon all persons alike, and if it imposes upon the mayor, or other officer of the city, any duty which the council has the authority to impose, then the obligation to perform that duty becomes binding. The mayor had a discretion in the approval of the ordinance, and this discretion he exercised; but, upon its passage notwithstanding his veto, the mayor became charged with the performance of a mere ministerial duty, and no officer has a discretion to obey, or to refuse to obey, a law requiring the performance of a mere ministerial duty.

(3-4) It is insisted by learned counsel for appellant that "the contract itself being a part of the ordinance which the mayor vetoed, he can not now be compelled, nor can they ask aid of the court to compel him, to do that which he has already exercised his discretion in refusing to do. In vetoing the ordinance, the mayor vetoed the contract as well, and now to require him to sign and approve the contract is an indirect way of compelling him to approve the ordinance providing for the contract."

It is further insisted that if the council had authority to pass this ordinance over the mayor's veto, it had

the power to approve the contract without the necessity of the mayor's signature, and that appellees are seeking to compel appellant to do a thing which the city could have done, and can yet do, itself.

We have seen, however, that this proceeding is not intended to control the discretion of the mayor, but is intended to compel the performance of a duty imposed by an ordinance which was passed over his veto. The mayor would have no more discretion, and does not have any more discretion, in obeying an ordinance passed over his veto, than he has in obeying one which was passed with his approval. It may be true the ordinance could have been so drafted as not to require the signature of the mayor to the contract; but, as passed, it did require his signature, and this can not be said to be an inappropriate manner of executing such contracts. On the contrary, it is usual and customary for the mayor, as the chief executive officer of a city, to act for and in the name of the city in the execution of any contract which the city may lawfully make; and if the city had the authority to pass the ordinance in question, it can not be material that it might have passed a different ordinance on the subject and one which would not have required appellant to perform any duty in its enforcement.

(5) It is argued that the evidence conclusively shows that two of the aldermen, without whose vote the ordinance could not have been passed over the mayor's veto, did not then reside in the wards for which they claimed, respectively, to be sitting as aldermen. The court found, however, that the aldermen were *de facto* officers, and held that their qualifications to serve as such could not be inquired into in a collateral proceeding. The court was correct in so holding, and many cases are cited in the brief in support of that position, and, among others, the following Arkansas cases: *Eureka Fire Hose Co. v. Furry*, 126 Ark. 231, 190 S. W. 427; *Barton v. Lattourette*, 55 Ark. 81; *Murphy v. Shepard*, 52 Ark. 356; *Moore v. Turner*, 43 Ark. 243.

(6)   The real question in the case is that of the authority of the council to pass the ordinance. It does not appear that any formal transfer of the street had been made from the commissioners of the improvement district to the city. But no formal delivery is required for this purpose. Evidently, the transfer had been made, and the street was under the control of the city, and had been for a sufficient length of time for the street to be so badly worn as to require the repairs which form the subject-matter of this controversy. The original contract provided that if the paving company failed to make repairs, either the improvement district or the city might sue the paving company for a breach of contract, and under this contract the city had sued that company, making the commissioners of the district parties to the suit. This suit was defended upon the ground that the paving company was under no duty to make the repairs. The compromise agreement, which the ordinance in question approved, was executed in the name of both the city and the improvement district. In the case of *English* v. *Shelby,* 116 Ark. 212, we upheld the right of the commissioners of an improvement district to sue on the bond of a contractor given to maintain a street for a specified number of years. No question was there involved about the right of the improvement district, rather than the city, to sue. In the case of *Peay* v. *Kinsworthy,* 126 Ark. 323, 190 S. W. 565, we held that the commissioners of a sewer improvement district which was still in the hands and under the control of the commissioners had the right to maintain, in their name as commissioners, a suit to protect the interests of their district. There is no conflict of authority here between the city and the commissioners of the improvement district. The bond was executed for the benefit of both. The suit against the paving company was brought by both the city and the commissioners of the improvement district, and the compromise agreement, settling this litigation, which the

ordinance directs the mayor to sign, runs in the name of both the city and the improvement district.

It is argued by learned counsel for appellant that the control of this litigation, and the right to enforce the provisions of the maintenance bond, and to supervise the repair of the streets, inheres in the board of public affairs, and not in the city council. But we do not agree with counsel in this contention. Section 5607 of Kirby's Digest provides that "the city council shall possess all the legislative powers granted by this act, and other corporate powers of the city not herein prohibited, or by some ordinance of the city council made in pursuance of the provisions of this act and conferred on some officer of the city; they shall have the management and control of finances, and of all the property, real and personal, belonging to the corporation. * * *"

Section 5530 of Kirby's Digest provides that "the city council shall have the care, supervision and control of all the public highways, bridges, streets, alleys, public squares and commons within the city; and shall cause the same to be kept open and in repair, and free from nuisance."

The maintenance bond was executed by the paving company for the benefit of the city and of the improvement district, and, as an incident to the right to sue thereon, the right to settle that litigation arose. Litigants are not to be denied the right to settle their litigation. The policy of the law encourages the earliest settlement of litigation. The ordinance in question authorizes and directs this action with reference to this litigation, and as the authority exists to pass this ordinance, the matter was concluded when the ordinance was passed. We can not consider the question of expediency involved in the enactment of this ordinance, and have not done so. We rest our decision upon the determination of the power of the council to pass the ordinance.

It follows, therefore, that, in effect, this is a suit to compel the mayor of Hot Springs to discharge a minis-

terial duty pursuant to a valid ordinance, under which no discretion vests in him. His duty being to obey this ordinance, the writ of mandamus was properly awarded to compel him to do so, and the order of the court below to that effect is, therefore, affirmed.