## STATE EX REL. VILLAGE OF CHISHOLM AND HENRY FUGERE v. GEORGE K. TRASK.[1]

April 13, 1923.

No. 23,421.

**When village is proper relator for writ of mandamus.**

1. A village is a proper relator in a proceeding by mandamus to compel its president to sign bonds.

**Signing of village bonds not a discretionary act.**

2. The signing of bonds by the president is not a discretionary act.

**Call for bids did not prevent competition.**

3. The call for bids, requiring the bidder to be ready to take and pay for the bonds forthwith, did not naturally or in fact deter bidders or prevent competition.

**Issue for smaller amount does not affect validity of bonds.**

4. The validity of the bonds is not affected, nor is the duty of the president to sign, because the full amount authorized was not directed to be sold, nor because a less expensive building than first contemplated was determined upon by the council; nor is the character of the arguments presented to the voters when the proposition was submitted open to consideration.

**Writ not granted when unavailing.**

5. Mandamus will not be issued when it will be unavailing. In this case the chance that the purchaser will not comply with its bid does not prevent the issuance of the writ.

Upon the relation of the village of Chisholm and another the district court for St. Louis county granted its alternative writ of

[1] Reported in 193 N. W. 121.

mandamus directed to George K. Trask commanding him, as president of the village council, to sign certain bonds of the village and a resolution of its village council by which they were offered for sale. The matter was heard by Freeman, J., who made findings and granted a peremptory writ. From the judgment entered pursuant to the order directing the issue of a peremptory writ, George K. Trask appealed. Affirmed.

*John R. Palmer*, for appellant.

*Austin & Austin* and *Charles T. Wangensteen*, for respondents.

DIBELL, J.

Mandamus on the relation of the village of Chisholm and Henry Fugere, a resident taxpayer, against George K. Trask, president of the village council, to compel him to sign certain bonds of the village, and a resolution pursuant to which they were offered for sale and a bid accepted. There were findings and judgment for the relators and the defendant appeals.

The council is the governing body of the village. It has 5 members. The defendant is its president. He participates in its proceedings but has no veto. In 1920 the voters of the village authorized an issue of bonds in the sum of $650,000 for the erection of a public building. In Powers v. Village of Chisholm, 146 Minn. 308, 178 N. W. 607, it was held that the village had authority to build a village hall and that the proposition to issue the bonds was carried at the election at which it was submitted. Other litigation followed. On November 22, 1922, the village council resolved to issue $188,000 of the $650,000 for the erection of a public building. Notice of sale was given. Kalman, Wood & Company was the successful bidder. Bonds were prepared. The defendant refused to sign. This proceeding followed.

1. The village is a proper relator. In its governmental capacity, acting through its council, it has authority to construct a public building. In constructing the building it is a contracting party. In Sinclair v. Mayor, 198 Mass. 248, 84 N. E. 453, it was held that a majority of the board of aldermen were proper relators, and it was suggested that there was no remedy in the name of the city since one of the defendants was its executive head. And see Cooperrider

v. State, 46 Neb. 84, 64 N. W. 372. In Cooper v. Nelson, 38 Iowa 440, it was held that the rule of law that one cannot sue a partnership or board of which he is a member does not apply to mandamus. And in McClendon v. State, 129 Ark. 286, 195 S. W. 686, L. R. A. 1917F, 535, involving a situation much like the one presented to us, the writ was issued on the relation of the city as of course. We are cited no case considering the exact question. If the signing of the bonds can be enforced mandamus is the remedy. The municipality through its council constructs the building. As relator it should be permitted to enforce the signing of the bonds which are essential to the carrying out of the project. It may be that a majority of the members of the council might be relators, or that the resident taxpayer joined with the village might be the sole relator, or that others might be relators.

2. The signing of the bonds was not discretionary with the president of the council. It was his right to determine whether they were legally issued. In determining this question he exercised his judgment. He exercised no discretion in the sense in which that word is used when coercive action by mandamus is resisted. It was for him to determine the question correctly. If he was of the opinion that the issue was illegal he could refuse to sign without subjecting himself to rightful criticism. On mandamus the court determines the question. If in accord with his view it sustains him; if adverse he is coerced. Mandamus has been used so often in situations not much unlike this that we do no more than cite a few cases. State v. Ames, 87 Minn. 23, 91 N. W. 18 (to compel mayor to sign bonds of the city); State v. Rogers, 93 Minn. 55, 100 N. W. 659 (to compel city comptroller to join in the execution of bonds); State v. Reiter, 140 Minn. 491, 168 N. W. 714 (to compel mayor to sign liquor license); State v. Nichols, 83 Minn. 3, 85 N. W. 717 (to compel mayor to sign an order for the salary of the city attorney); State v. Ames, 31 Minn. 440, 18 N. W. 277; State v. Vasaly, 98 Minn. 46, 107 N. W. 818 (to compel a mayor to sign an order audited by the comptroller and allowed by the council); State v. District Court of Ramsey County, 32 Minn. 181, 19 N. W. 732 (to compel a city comptroller to countersign a contract); State v. McCardy, 62 Minn. 509, 64 N. W. 1133 (to compel a city comptroller to audit and adjust a claim).

3. The call for bids stated that they would be ready for delivery at the date of the sale and that the successful bidder would be expected to take and pay therefor forthwith. It is claimed by the defendant that the manner of the offer deterred or tended to deter bidders and prevent competition. We cannot see that such was its natural or necessary tendency; and there is no evidence that such was its actual result.

4. After it was held that the village could erect a public building, including a village hall, and that the proposed issue of bonds was valid (Powers v. Village of Chisholm, 146 Minn. 308, 178 N. W. 607), litigation between the mining companies and the village, or citizens of the village and the village followed. We need not give the details. There was great delay. In November, 1922, the council determined to issue $188,000 of the $650,000 of bonds and it was contemplated that this would be the cost of the public building. The council determined that it was unnecessary to build so expensive a public building as had been contemplated. We see nothing unlawful in this. We do not see that the bonds now proposed to be sold are invalid because the council finds it inadvisable to use the full amount of the original issue. It is urged that in the campaign of 1920 the voters were promised that the building would contain a recreational hall, and perhaps other features, thought desirable by different classes of the general public. It is not for us to enter into a consideration of the campaign arguments in the election of 1920. If there is a case where inducements to secure votes at a bond election invalidates it this is not such. State v. City of Lake City, 25 Minn. 404. The ballot put before the public was a plain statement of the purpose of the proposed issue and the proposition carried.

5. Finally, it is claimed that the relief if granted will be unavailing. The contention is that there is no binding contract with Kalman, Wood & Company, the successful bidder, and that it might now refuse to take the bonds. The finding of the court is that the bidder is ready to take the bonds. It is true that if the relief granted will necessarily be unavailing a writ of mandamus will not issue. Thus in State v. Archibald, 43 Minn. 328, 45 N. W. 606, it was

held that mandamus would not issue requiring an assessor to proceed with the assessment of property when at the date of the hearing the time in which the assessment could be made under the statute had passed. This is not a like case. The evidence indicates that the bonds will now be taken. Such is the effect of the trial court's finding.

Judgment affirmed.