[130]          VANDERSLICE *vs.* NEWTON.

The defendant, who owned a steamboat, agreed to take in tow from New York up
the Hudson river to Albany, *or as far as the ice would permit,* the plaintiff's canal
boat, at the risk of the master and owners thereof. *Held* that a *physical possibility*
of towing the boat through to Albany did not impose on the defendant an obliga-
tion to do so, provided the danger of the navigation occasioned by ice in the river
was such as a prudent man would not be willing to encounter.

And the danger which would excuse the defendant from towing the boat through
was, it seems, danger to the steamboat, and not to the canal boat.

And held further, that the defendant's contract bound him only to the performance of
a single trip; and therefore, if the danger was such as to justify him in leaving the
canal boat at a point short of the place of destination, that he was not bound to
take her through afterwards, although the defendant's own boat performed the en-
tire trip to Albany, and returned on another day and took up to that place other
boats which had been in tow and were left at the same place with the plaintiff's
boat.

General damages are such as *necessarily* result from the injury complained of, and
may be recovered without a special averment in the declaration. *Per* RUGGLES, J.

But such damages as are the natural but not the necessary result of the injury are
special, and must be stated in the declaration.

Where in an action for breach of contract certain special damages were alledged and
proved, but there was no proof of general damage, and the jury were charged that
besides the special damages they might give such general damages as they sup-
posed naturally resulted from the injury, *held* that the charge was erroneous.

VANDERSLICE brought assumpsit in the New York common
pleas, against Newton, upon a contract in writing, by which the
defendant agreed that his steamboat the " O. Ellsworth," Capt.
Atwood, should " take in tow on the Hudson river, from New-
York to Albany, *or as far as the ice would permit,* the plaintiff's
canal boat, 'Judge Royer,' at the risk of the master and owners
thereof." The contract was made late in November, 1843.
The breach complained of was that the defendant did not tow
the canal boat to Albany, but left her at Coxsackie, 22 miles
short of that place. The plaintiff had a verdict for $150, and
judgment thereon in the common pleas, which was affirmed by
the supreme court sitting in the first district, on error brought
The defendant appealed to this court. The questions in the

Vanderslice *v.* Newton.

case arose upon the charge given to the jury, and they [131] are sufficiently stated in the opinion of RUGGLES, J.

*H. S. Dodge*, for appellant.

*J. T. Brady*, for respondent.

RUGGLES, J.  The defendant agreed with the plaintiff, that the defendant's steamboat, the O. Ellsworth, Captain Atwood, should take in tow from New York to Albany, or as far as the ice would permit, the plaintiff's canal boat, at the risk of the master and owner thereof.  The canal boat was towed as far up the Hudson river as Coxsackie, 22 miles below Albany, and there left, for the alledged reason that she could not safely be taken farther on account of the floating ice in the river.

The judge charged the jury that the words in the contract, " as far as the ice will permit," had reference to a physical impossibility occasioned by the ice, " and that the defendant was bound to take up the canal boat if it was physically possible; that is, if other boats were and could be taken up."  The plaintiff excepted to this part of the charge.  We do not think the law was given accurately to the jury.  The defendant, by his contract, was required to tow the canal boat as far up the river as he could without great and imminent hazard from the ice; such hazard as no prudent man would willingly encounter; and there his duty ended; although it might have been physically possible to have continued to Albany.  The judge's explanation of what he meant by physical possibility is not satisfactory ; because other boats may have been towed to Albany at a hazard which the contract with the plaintiff did not require the defendant to incur in proceeding with the plaintiff's canal boat.

The hazard which would have excused the defendant from taking the canal boat to Albany was, however, hazard or danger to the steamboat—not to the canal boat.  The latter was to have been towed at the risk of the master and owner: and it was in evidence that when the master of the steamboat refused at Coxsackie to take the canal boat further up the river, the

[132] plaintiff told him the canal boat must go on, and he would risk all damages. Danger to the canal boat therefore was to be laid out of the question in determining what the defendant's duty was in taking it to Albany.

The judge further charged, that if Capt. Atwood was right in leaving the canal boat at Coxsackie, he was bound to return there and tow her to Albany without any unnecessary delay. We think the judge was mistaken in this also. The defendant contracted only for services to be rendered at a single trip; and this trip was to terminate in case of obstruction by the ice, wherever the obstruction was met with. The plaintiff's duty ceased therefore at the end of the trip; and this was at Coxsackie, if the obstruction there was sufficient to justify the defendant in leaving the canal boat. His going back for other boats and towing them up on the following day, was evidence tending to show that the defendant's boat might have been towed up at that time; but if the obstruction of the navigation was such that the trip was fairly terminated at Coxsackie, these acts were not evidence that the defendant had any further duty to perform under the contract.

The steamboat had several other canal boats in tow at the same time with the plaintiff's. But the defendant's contract with the plaintiff was absolute, and without reference to other boats, or to the defendant's duty as to them. He can not therefore excuse the breach of his contract with the plaintiff on the ground that he had made so many other contracts of the same kind that he could not perform them all.

With respect to the damages, the general rule in questions of this nature is, that the plaintiff is entitled to recover as a recompense for his injury all the damages which are the natural and proximate consequence of the act complained of. (2 *Greenl. Ev.* § 256.) Those which *necessarily* result from the injury are termed general damages, and may be shown under the general allegation of damages at the end of the declaration. But such damages as are the natural, although not the necessary result of the injury, are termed special damages, and must

be stated in the declaration to prevent a surprise upon [133] the defendant; and being so stated may be recovered.

The defendant contracted to tow the plaintiff's boat up the river at a season when there was not only an apprehension of an interruption from the ice, but when there was a probability that the river would soon be frozen up and the navigation entirely closed. The plaintiff complained that he was detained eight days at Coxsackie on expense, and that when he finally arrived at Albany, and before he could discharge her cargo, he was in consequence of the detention, shut in there by the ice and compelled to keep his boat there during the winter, instead of having her towed down the river, as otherwise might have been done.

The judge charged that if the plaintiff was entitled to recover at all, he ought to be allowed the expenses occasioned by his detention of eight days at Coxsackie. There was no error in this. The detention was the immediate consequence of the breach of the defendant's contract. At that place and at that season, it appeared to be impossible at any price to procure a steamboat, forthwith to take the canal boat to Albany. The plaintiff used his best endeavors for that purpose without effect. It would have been imprudent in him to discharge his men while there, and it is evident that they could not be usefully employed in any other business. The expenses incurred while detained at Coxsackie were therefore an unavoidable loss to the plaintiff, and the natural and necessary consequence of the defendant's fault, for which he ought to be answerable.

The judge further charged the jury, that the plaintiff's claim for special damages did not preclude him from resorting to his claim for general damages, presumed by law to result naturally from the injury as proved, and such damages the jury might find from the proof; and that the jury had the right to give such general damages as they supposed to have naturally resulted from the breach of the contract. To all this the defendant excepted. He requested the judge to charge that there was no proof of any general damages, excepting

nominal damages, nor of any other damages, excepting the several items claimed by the plaintiff.

[134] Putting the matter of these exceptions in closer connection, it amounts to this; that the jury were advised that they were authorized to find general damages beyond a nominal amount; and that there was proof in the case to justify such finding. This I think was erroneous. The plaintiff's boat was towed to Albany free of expense after eight days' detention at Coxsackie. The contract was performed, but not in time. All claims for actual damage arose from detention. They are all properly stated in the declaration as special damages, and the plaintiff should have been confined in his recovery of actual damages to the damages specially claimed.

The judge excluded from the consideration of the jury the plaintiff's claim for keeping the canal boat at Albany during the winter. It may perhaps be questionable whether that decision was not too favorable for the defendant. (*Blanchard* v. *Ely*, 21 *Wend.* 350.) That question however is not to be settled here.

Judgment reversed and new trial ordered.