JAMES SINCLAIR & others *vs.* MAYOR OF FALL RIVER
& others.

SAME *vs.* CHARLES P. BRIGHTMAN & another.

Bristol.    March 5, 1908. — March 11, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Municipal. Corporations,* By-laws and ordinances, Officers and agents.    *Trust. Stat-
ute.    Fall River.    Water Works.    Tax.    Mandamus.    Equity Jurisdiction,*
To restrain illegal expenditure of money by city or town.

By St. 1871, c. 133, §§ 15, 17, providing that the city of Fall River might issue
"water bonds" to an amount not exceeding $500,000 to meet the expenses
incident to the construction of its waterworks, and that the city council from
time to time should regulate the price for which the water might be used, with
a view to paying from the net income and receipts of the waterworks "not
only the interest, but ultimately the principal of the debt so contracted, so far
as the same may be practicable and reasonable," such net receipts are not con-
stituted a trust fund for the benefit and security of the holders of the bonds
authorized by that act and acts supplementary thereto.

Under St. 1871, c. 133, §§ 15, 17, providing that the city of Fall River might issue
"water bonds" to an amount not exceeding $500,000 to meet the expenses inci-
dent to the construction of its waterworks, and that the city council from time
to time should regulate the price for which the water might be used, with a
view to paying from the net income and receipts of the waterworks "not only
the interest, but ultimately the principal of the debt so contracted, so far as the
same may be practicable and reasonable," bonds were issued and some of them
were outstanding in 1907, when a fund of $90,000 had been accumulated and was
standing to the credit of the waterworks under ordinances then in force, which
provided that receipts from water rates should be so placed to the credit of the
waterworks and that appropriations should be made therefrom for the payment
of expenses incurred in connection with their construction and maintenance and
the payment of the interest and principal of the water loan.    In 1907 an ordinance
was passed amending the previous ordinances and providing that receipts from
the water rates should be paid into a general fund from which appropriations
were made for general expenses of the city, and that payments of interest and
the principal of the water loan should "follow the usual course of other city
indebtedness," and an order was adopted by the city council transferring
$59,000 from the sum held to the credit of the waterworks to the general fund.
*Held,* that the ordinance was not contrary to the public policy of the Common-
wealth as displayed in the Constitution and developed in its legislation ; and
that neither the ordinance nor the order impaired the obligation of the city
with its bondholders, there having been no contract that the fund should be
held only for the purpose of paying the principal and the interest of the bonds.

An ordinance of a city provided that receipts from water rates, which were
fixed from time to time by the city council with legislative authority, should
be paid into a general fund from which appropriations were made for general
expenses of the city, and that payments of interest upon bonds, theretofore

issued for loans for the purpose of constructing and maintaining the waterworks and of making payments on account of sinking funds provided for such loans and on account of the principal of the debt, should "follow the usual course of other city indebtedness." *Held,* that the ordinance did not create any disproportionate burden of taxation.

A city has power, acting through its proper authorities, to provide for the management of its internal affairs by providing that a finance committee or other officials shall submit detailed estimates of intended expenditures and shall make recommendations to the city council in reference thereto before the making of appropriations by the latter body.

It is not necessarily unlawful for a city council to provide by ordinance that costs and expenses incurred in taking land adjoining its water supply, for the purpose of providing a reservoir and storage basin and of preserving the purity of the water supply, should be paid by special appropriation of the city council "after such expenditures shall have had the approval of the council, to which body they must have been recommended by the committee on finance." And it does not follow that the council by such ordinance would be deprived of the power to act upon such question by the mere inaction of a finance committee, since, it being a mere matter of procedure, the council, in any special case, may waive or abrogate the provisions of the ordinance with regard to the recommendation of the finance committee.

An ordinance of the city of Fall River, adopted over the veto of the mayor, amended previous ordinances in accordance with which receipts from water rates were placed by the city treasurer to the credit of the waterworks and were to be appropriated to pay expenses incurred in connection with their construction and maintenance and to the payment of the interest on and the principal of loans secured by bonds of the city issued under the provisions of St. 1871, c. 133, §§ 15, 17, and of statutes in amendment thereof and supplementary thereto, and directed that receipts from water rates should be paid into the general fund from which appropriations were made for general expenses of the city, and that payments of interest upon the bonds and on account of sinking funds, which had been provided for the payment of the principal of the bonds, should "follow the usual course of other city indebtedness." An order of the city council passed after such ordinance and also over the mayor's veto, transferred $59,000 of a sum of $90,000, which had been accumulated by the city under the previous ordinances from the net receipts of the waterworks, to the general fund to be used for general expenses of the city. The mayor, the treasurer and the auditor of the city, acting under the advice of the city solicitor, refused to recognize or to act in accordance with the ordinance and the order, and sixteen individuals who comprised a majority of the board of aldermen, acting as individuals and as a board, brought a petition for a writ of mandamus directing the mayor, treasurer and auditor to recognize the validity of the ordinance and the order and to carry out the latter, and also brought a bill in equity under R. L. c. 25, § 100, to prevent an alleged illegal expenditure and appropriation of money by the treasurer and auditor. *Held,* that both the ordinance and the order were valid and binding, and therefore that both the petition and the bill in equity might be maintained and that the writ prayed for in the petition should issue.

PETITION, filed in the Supreme Judicial Court for the county of Bristol December 26, 1907, by sixteen individuals who con-

stituted a majority of the board of aldermen of Fall River, acting both as a board and individually, for a writ of mandamus directing the mayor, treasurer and auditor of that city to recognize the validity of, and to act in accordance with the ordinance and order described in the opinion; also

BILL IN EQUITY, filed in the same court on the same day, by the same individuals, under R. L. c. 25, § 100, against the treasurer and the auditor of the city, seeking to restrain an expenditure of funds of the city otherwise than in accordance with such ordinance and order.

The two cases were heard together before *Braley,* J., who made a finding of facts and reserved the cases for the consideration of the full court.

The facts are stated in the opinion.

*J. M. Morton, Jr.,* for the petitioners.

*H. A. Dubuque,* for the respondents.

SHELDON, J. The waterworks of the city of Fall River have been constructed, and rates for the use of the water supplied thereby have been fixed, under the authority of St. 1871, c. 133, and some other special acts relating to the water supply of that city. Sts. 1873, c. 356; 1874, c. 244; 1875, c. 222; 1891, c. 114; 1893, c. 220; 1894, c. 233; 1895, c. 478; 1897, c. 285; 1900, c. 156. By a city ordinance of Fall River, adopted in 1874, in pursuance of the provisions of St. 1871, c. 133, § 7, the Watuppa water board was created and has since been maintained, and has had the care and management of these waterworks. Revised Ordinances of Fall River, ed. of 1879, c. 39. Ed. of 1904, c. 46. By the ordinances of Fall River in force up to November, 1907, it was provided that all receipts from water rates should be paid to the city treasurer and placed by him to the credit of the waterworks, and should be appropriated, first to the payment of the expenses of the management and repairs of the works; and then, in the order mentioned, to the payment of interest on the water loan, to pay for extensions within certain limits, for expenses to be incurred for the better protection and preservation of the water supply under St. 1891, c. 114, and under all acts in amendment thereof, and finally to the principal of the water loan. Revised Ordinances of Fall River, 1904, c. 46, §§ 13, 15. The cost of constructing the works was met by the issue of bonds as

authorized by the statutes already referred to, issued to a large amount since the passage of these ordinances, and still outstanding. These bonds are direct obligations of the city, and constitute the water loan mentioned in the ordinances referred to. They contain no reference to these ordinances. Until 1897 the income from the water rates was not sufficient to pay the expenses of the management and maintenance of the waterworks and the interest upon the water loan; and large sums were applied for these purposes from the general funds of the city, raised by direct taxation; but the revenue from water rates has increased, so that a large surplus has accumulated therefrom over the amount of all expenses and interest upon the water loan, and was in the city treasury at the beginning of November, 1907. The bonds constituting the water loan now outstanding were issued at various dates from June 15, 1878, to May 2, 1904, inclusive; they amount to $6,550,000; and they become due at various dates from May 1, 1908, to May 2, 1934, inclusive. Some of these bonds were issued to provide funds for the payment of prior bonds issued under the acts of 1871, 1873, 1874 and 1875, referred to above. But many of the bonds originally so issued have been paid from direct taxation and by means of sinking funds established by the city. The city has provided sinking funds to pay the principal of all outstanding water bonds when they mature, as provided under the general laws of the Commonwealth, by means of yearly payments made into the sinking funds wholly from direct taxation; but the sinking funds do not provide for the interest on the water bonds. The present city charter of Fall River establishes the water department of that city, "to be under the charge of the Watuppa Water Board." St. 1902, c. 393, § 23, cl. 15.

Under this state of facts, on November 4, 1907, the board of aldermen of Fall River, which constitutes its city council under § 6 of its charter as amended by St. 1903, c. 225, § 1, passed over the mayor's veto the following ordinance:

"Section 1. Section 13, of Chapter 46, of the Revised Ordinances is hereby amended by striking out all the words after 'latter,' in the third line of said section, and adding the words: 'in the general funds of the City of Fall River,' so that the section shall read: 'Section 13. The money received by the city

collector for water rates shall be paid by him to the city treas-
urer, and shall be placed by the latter in the general funds of the
city of Fall River.'

"Section 2. Section 15 of Chapter 46, of the Revised Ordi-
nances is hereby repealed, and in its place shall be inserted the
following: 'Section 15. First: Specific sums shall be appropri-
ated by the City Council for the necessary repairs, extensions
and improvement of the waterworks system, also for operating
and managing, for the payment of officers, agents, clerks and
assistants of the Watuppa water board. Said appropriations
shall be voted after full and detailed estimates have been sub-
mitted to the finance committee by the Watuppa water board,
and recommended by that committee to the city council.

"'Second. Payments of interest on the water loan, payments
on account of sinking fund of said loan, and all payments of
principal of said loan, shall follow the usual course of other city
indebtedness.

"'Third. The cost and expenses incurred under chapter one
hundred and fourteen of the Acts of the year eighteen hundred
and ninety-one shall be paid by special appropriations of the city
council after such expenditures shall have had the approval of
said city council, to which body they must have been recom-
mended by the committee on finance.'

"Section 3. This ordinance shall take effect upon its passage."

On December 2, 1907, the board of aldermen passed over the
mayor's veto an order making certain appropriations and author-
izing the city treasurer to transfer to the general revenue account
of the city $59,000 of the amount (which was then nearly
$90,000) then credited to the account of the waterworks depart-
ment, and directing that the same be appropriated to various
purposes mentioned in the order.

The treasurer, the auditor and the mayor of Fall River con-
tend that the ordinance of November 4, 1907, and the order of
December 2, 1907, are invalid and illegal, and they decline and
refuse to recognize them or to act according to their provisions;
and the first of the cases before us is a petition brought by the
majority of the aldermen, individually and as a board, for a
mandamus to command the treasurer, the auditor and the mayor
to recognize the validity of the ordinance and of the order, and

to command the treasurer and the auditor to carry out the said order.

The first question to be considered arises on the language of St. 1871, c. 133. By § 15 of this act the city of Fall River is authorized to issue " scrip, notes or certificates of debt to be denominated on the face thereof ' water bonds of the city of Fall River,' to an amount not exceeding five hundred thousand dollars "; and it is provided by § 17 that " the city council shall from time to time regulate the price or rent for the use of the water, with a view to the payment from the net income and receipts, [of] not only the interest, but ultimately the principal of said debt so contracted, so far as the same may be practicable and reasonable." The respondents claim that this is a legislative requirement that the receipts from water rates shall be applied to pay the interest and principal of the water debt; that these net receipts are thereby constituted a trust fund for the benefit and security of the holders of the bonds authorized by that act and the acts supplementary thereto; and that the ordinance of November 4, 1907, is invalid as being in contravention of this legislative provision. But we do not think so. When the Legislature has chosen to impose in a water act a requirement of this nature, it has not left its meaning to conjecture. For example, in the act for the supply of water to the city of Boston, after authorizing the city council to regulate the price or rent for the use of the water, the act expressly provides that the net surplus income " shall be set apart as a sinking fund, and shall be appropriated for and towards the payment of the principal and interest " of the water debt, "and shall . . . be applied solely " to that purpose until the water debt should be fully paid. St. 1846, c. 167, § 11. And provision was made in §§ 12 and 13 for an increase in the water rates if they should be insufficient for this purpose, and for their reduction if they yielded a greater amount than was needed. *Minot* v. *Boston*, 142 Mass. 274. The careful omission in the act of 1871 of anything corresponding to this provision must be presumed to have been intentional. In view of this omission and of the fact that the bonds authorized by this act were to be the direct obligations of the city, and of the fact that, before the passage of this act, this court, in *Attorney General* v. *Salem*, 103 Mass. 138, and in *Carlton* v. *Salem*,

103 Mass. 141, had declined to enforce against indirect attack by the city of Salem the much stronger provisions contained in St. 1864, c. 268, § 13, we are of opinion that the Legislature did not intend to direct absolutely by the provisions of § 17 in the act of 1871 that the water rates should be appropriated as a trust fund to the payment of the principal and interest of the water debt, but simply to direct the city council to regulate the amount to be charged for water rates so as to raise, so far as this should be found to be practicable and reasonable, a sum sufficient to pay the debt. The ordinances by which the city at first provided for the appropriation of the receipts from water rates of course did not exhaust the power of the city council to deal with the subject matter. But it is of some significance that, as we already have seen, by these ordinances the receipts from water rates, after paying the expenses of the management and repairs of the works and interest upon the water debt, were to be applied to paying for certain extensions and for expenses to be incurred under subsequent statutes, and that only such surplus as might then remain was appropriated for the payment of the principal of the water debt; and it does not appear that any objection ever has been taken to these provisions. It would seem accordingly that it is only recently that it has occurred to any one to claim that the net receipts constituted a trust fund which must be applied wholly to pay interest and principal of the debt. We are satisfied that the purpose of the Legislature was not to require a specific application of the net receipts from water rates, but only to provide that, so far as reasonably practicable, rates should be made high enough to yield an income that would enable the city, without imposing any additional burden upon its taxpayers, to pay the regularly recurring interest upon its water debt, and ultimately to provide for the principal thereof in such reasonable way, by means of a sinking fund or otherwise, as it might through its city council determine. We need not consider how far the provisions of the St. of 1871 may be taken to be incorporated into the subsequent statutes. But it may be added that, if the intent of the Legislature in the original act were doubtful, as we do not think that it is, we think that it would be put beyond question by the fact that the more recent statutes which authorize the issue of water bonds

by the city of Fall River not only give no security to the bond-holders upon either the waterworks or the net receipts from water rates, but expressly provide for their ultimate payment by means of sinking funds. Sts. 1893, c. 220, § 2; 1894, c. 233, § 2; 1895, c. 37, § 2; 1900, c. 156, § 2. And for the same reasons this ordinance cannot be said to be contrary to the public policy of the Commonwealth, as displayed in the Constitution and developed in its legislation. It follows also from what has been already said that neither the ordinance in question nor the order of December 2, 1907, can be said to be invalid as impairing the obligation of the contract of the city with its bondholders. Neither the St. of 1871 nor the ordinances origi-ually passed under its authority constituted of themselves any such contract; and the decisions cited by the respondents have no application to the case before us.

The other objections taken by the respondents to the validity of the new ordinance and order may be more briefly considered.

The ordinance does not create any disproportionate burden of taxation. Those who take water from the city's works do so voluntarily, and agree thereby to pay the rates as fixed from time to time by the city council. It is not necessarily to be re-gretted if the net income from the water rates shall be found temporarily to yield some profit over the expenses of maintaining them and providing for the cost of their construction. The provision in St. 1902, c. 393, § 23, cl. 15, that the water department of the city shall be under the charge of the Watuppa water board, does not of course take away the power of the city coun-cil to make appropriations for the expenses and dispose of the net income from the waterworks.

Nor do we see any reason to doubt the power of a city, acting through its proper authorities, to provide for the management of its own internal affairs by providing that a finance committee or other officials shall submit detailed estimates of intended expen-ditures and shall make recommendations in reference thereto to the city council before the making of appropriations by the latter body; nor is it necessarily unlawful for a city council to provide by rule or ordinance that such expenses as are referred to in the third clause of § 15 of c. 46, of the Revised Ordinances, as amended by § 2 of the ordinance in question, shall be recom-

mended by a finance committee before being approved by the city council. These are of the nature of construction expenses. It would be strange if the city could not by ordinance impose any check upon them. Nor does it follow that the city council would be deprived of the power to act upon such a question by the mere inaction of a finance committee. The ordinance prescribes a course of procedure which we cannot declare to be invalid; but, because it is a mere matter of formal procedure, the city council, in any special case, may waive or abrogate its provisions. *Amesbury* v. *Bowditch Mutual Ins. Co.* 6 Gray, 596. *Braconier* v. *Packard*, 136 Mass. 50. *Holt* v. *Somerville*, 127 Mass. 408, 411. *Bennett* v. *New Bedford*, 110 Mass. 433, 437, 438. We need not consider whether the payment of money under appropriations made without compliance with such a recommendation could be enjoined at the suit of ten taxpayers under R. L. c. 25, § 100.

It is not necessary to consider in detail the other objections taken to the ordinance and the order in question. Both the ordinance and the order are valid and binding.

And we are of opinion that the duty of the respondents to recognize the validity of this ordinance and order may be enforced by mandamus. It is a public duty, in which all citizens have an interest. No remedy in the name of the city is available, because the respondents include the chief executive officer of the city and have been acting under the advice of the city solicitor. Mandamus has been maintained in our courts under somewhat similar circumstances at the suit of a board or the members of a public body. It was assumed that this could be done in *Alger* v. *Seaver*, 138 Mass. 331. The petitioners come to the court as individuals as well as in their character of a majority of the board of aldermen. *Doty* v. *Lyman*, 166 Mass. 318. *Draper* v. *Mayor of Fall River*, 185 Mass. 142. "There is a great weight of American authority in favor of the doctrine that any private person may move without the intervention of the Attorney General for a writ of mandamus to enforce the performance of a public duty not due to the government as such." *Attorney General* v. *Boston*, 123 Mass. 460, 469, and cases there cited. *Welch* v. *Swasey*, 193 Mass. 364, 377.

The petitioners are entitled to a writ of mandamus as prayed for.

The second case is a bill in equity brought under R. L. c. 25, § 100, to restrain the city treasurer from placing to the credit of the waterworks account the moneys to be received from water rates and from paying out any money on account of the waterworks on the order of the Watuppa water board except from appropriations duly made for the water department by the board of aldermen, and the city auditor from auditing and allowing bills contracted by the Wattuppa water board in excess of appropriations made therefor by the board of aldermen. The defendants have demurred and answered, but they do not insist upon any formal objections to the bill. Accordingly only the same questions are involved that have been already considered, and no further discussion of them is necessary.

The result is that the prayer of the petition for mandamus must be granted, and a decree entered for the plaintiffs on the bill in equity.

*So ordered.*