[Civ. No. 8531.   First Appellate District, Division One.—September 27, 1932.]

GENERAL ENGINEERING AND DRY DOCK CO. et al., Appellants, v. EAST BAY MUNICIPAL UTILITY DISTRICT, Respondent.

James H. Boyer and H. M. Anthony for Appellants.

T. P. Wittschen, L. W. Irving and Harold Raines for Respondent.

THOMPSON (GEORGE H.), J., *pro tem.*—This action was brought by the above-named five plaintiffs [General Engineering and Dry Dock Co., Roman Catholic Archbishop of San Francisco, Hilbar Properties Co., Real Property Investment Corp., and California Cotton Mills Co.] to secure a judgment of the court decreeing to be void the assessment and tax levied and collected by the defendant district for the fiscal year 1929 and adjudging that the sums paid by each of the said plaintiffs respectively as such tax be returned. The complaint was divided into ten counts, each of said plaintiffs being an active complainant in two of such counts. The demurrer of the defendant to plaintiffs' second amended complaint as it finally read by amendment was sustained by the court without leave to amend. Thereafter judgment in favor of the defendant was entered, from which judgment the plaintiffs have appealed. The question presented by this appeal is accordingly one of pleading: Was the court in error in so sustaining the demurrer interposed?

In the said complaint for the recovery of the tax that had been paid under protest, each of said five plaintiffs asserted as one cause of action that said tax so paid should be returned because of the alleged illegality of certain indebtedness of the defendant utility district in the purchase of the properties of the East Bay Water Company, which company was the predecessor of the defendant in the supplying of water to the area served and was a privately-owned utility, and as a second cause of action, that said tax so paid should be returned, for the reason that under the organic law (Stats. 1921, p. 245, chap. 218), under which the district was organized and was being operated, it was contemplated and intended that the district should be self-sustaining, that is, sustained from the revenues derived from the operation of the public utilities (sec. 18 of said Act, Stats. 1921, p. 257), and that as the defendant had as a fact embarked on and engaged in the business of selling water, it was required to fix rates in such amounts that the returns from the commodity sold would be sufficient to meet all its legitimate expenses and demands, and that the defendant failing so to do had no power to levy the tax in question.

The assessment and tax attacked by the plaintiffs as taxpayers of the utility district was one of fifty cents on each

one hundred dollars assessed valuation of all property in said district, including the properties of the plaintiffs, levied by the defendant on August 28, 1929, by resolution reading as follows: ''Resolution No. 2329. Fixing the amount of money necessary to be raised by taxation and levying a tax upon all property within the East Bay Municipal Utility District. Introduced by Director Johnston: Seconded by Director Latham. Resolved by the Board of Directors of the East Bay Municipal Utility District: 1. That in the opinion of the Board of Directors of this District the revenues thereof will not be sufficient to pay the principal or interest on the bonded debt of the District as it becomes due or to carry out the objects and purposes of the District and that the amount of money necessary to be raised therefor by taxation is the sum of $2,031,650.00. 2. That said Board of Directors having heretofore elected to avail itself of the assessments made by the Assessors of the Counties of Alameda and Contra Costa, respectively, and to take such assessments as the basis for District taxation and to have its taxes collected by the county officials of such counties. Now, therefore, pursuant to law the said Board of Directors does fix the rate of taxation for the East Bay Municipal Utility District for the fiscal year beginning July 1, 1929, and ending June 30, 1930, at 50 cents upon each hundred dollars of the valuation of property as so assessed by the said county assessors of Alameda and Contra Costa Counties for the property within each respective County, said rate of tax being sufficient to raise the amount hereinbefore fixed by the said Board of Directors as required by law; and said Board of Directors does hereby levy a tax at said rate on all property within the District. 3. The Secretary is hereby instructed to immediately transmit to the county auditors of said counties, respectively, a statement of the rate of taxation so fixed and of the tax levy so made by the said Board of Directors by filing with each of said county auditors a certified copy of this Resolution. 4. That out of the sum raised by the foregoing tax levy there shall be set aside a sufficient sum to provide for sinking funds to meet the outstanding bonded indebtedness of the District as same becomes due; there shall next be reserved a sufficient sum to pay the interest on any of such bonds and any bonds that may be issued by the District which interest may become

due before the next general tax levy; any balance of the sum so raised shall be used to carry out the objects and purposes of the District.''

The defendant demurred generally to the entire complaint and also upon the ground of misjoinder and demurred generally and specially to each count.

The first cause of action, that set forth in the first count and in all the odd-numbered counts of the complaint, will be first considered. The substance of the allegations material and pertinent to the attacks made by the demurrer would appear to be as follows: On December 8, 1928, the East Bay Water Company, a private corporation for profit, owned and operated a public utility supplying water to the inhabitants of the district; that such company was indebted in an amount exceeding $20,790,700, evidenced by bonds theretofore issued and sold, which indebtedness was and is secured by mortgages and deeds of trust upon all the real and personal property of the company; that said company was also indebted in an aggregate amount of $600,000, which indebtedness was entirely unsecured; that on November 1, 1927, the electors of the district authorized a bond issue of $26,000,000 of five per cent bonds to be used in the acquisition or construction of a water distribution system; that such bonds were the only bonds ever voted or authorized by the electors of said utility district for the acquisition or construction of a distribution system, and that the proceeds from the sale of said bonds were and are the only funds or property of the district available for such purpose; that on December 7, 1928, the district acting through its officers and without submitting the matter to popular vote, in one transaction, purchased from the water company all of its real and personal property and all of its preferred and common stock; that in the consummation of this transaction the district paid the owners of the stock the sum of $13,962,200 and assumed the payment of the said outstanding bonded indebtedness and also the unsecured indebtedness above referred to, and that the said bonded indebtedness is now a lien upon the property of the district; that the bonded indebtedness so assumed bears interest at five and one-half per cent per annum; that on December 8, 1928, the water company transferred and delivered possession of its property subject to the lien of the bonded indebtedness to the

district and caused to be transferred to the district all the common and preferred stock, and that since said date the district has been and is in possession of all such property and is operating a water system throughout the district, selling water to its inhabitants; that on August 28, 1928, the utility district levied a tax and passed the resolution hereinbefore set forth; that said tax was levied by said utility district to provide funds to meet and pay the interest on said indebtedness assumed and incurred by it and to meet and pay the annual expenses of the government of said district and the operating expenses of said utility, and to provide funds wherewith to pay and satisfy said indebtedness assumed by it; that plaintiffs at the time of paying said taxes signed, executed and served on said tax collector a written protest describing its said property and reading in paragraphs 1 to 5 thereof as follows:

"Protest: To the Tax Collector of the County of Alameda, State of California and to the East Bay Municipal Utility District: The undersigned owner of the hereinafter described property, situate in said utility district, hereby protests against the assessment, levy and collection of a tax thereon, for the fiscal year 1929, by said East Bay Municipal Utility District, and hereby pays said tax under protest, upon the following grounds, to-wit: 1. that said assessment and tax are in violation of law and wholly void; 2. That said assessment and the levying and collection of such tax are in excess of the powers of the Board of Directors of such utility district; 3. That said assessment was made and said tax was levied in part to meet the huge deficit existing from the operation of a water system by said district, which deficit resulted from the failure of the board of directors of said district to fix such charges for such water furnished by said district as would pay the expenses of the government of said district, including salaries, office expenses and other necessary disbursements, the operating expenses of the said utility, the interest on the bonded indebtedness incurred for the acquisition, construction and completion thereof, and provide a sinking or other appropriate fund for the payment of the principal of such debt as it becomes due, and also provide an appropriate fund for repairs, replacements and betterments, when by the provisions of the Organic Act under which said district was

created, and under which bonds in the amount of sixty-five million dollars were voted by the electors of said district, said district was and is required to pay all charges and expenditures of the district, and the interest and principal of its bonded debt, from the revenues derived by the district from the operation of its public utilities, and that each public utility owned and operated by said district shall be self-sustaining; and during the entire year 1929 said utility district has owned and operated a water system and has fixed charges for such water, and has collected revenues therefrom, and can fix such charges and collect such revenues therefrom as will pay all such charges and expenses of said district and render such district self-sustaining; 4. That said assessment was made and said tax was levied to assist in the payment of a portion of the indebtedness incurred by said utility district during the fiscal year 1928, without the approval of a two-thirds vote of the electors of said district, voting on the proposition to incur such indebtedness, and which indebtedness exceeded the ordinary annual income and revenue of said district for said fiscal year 1928; 5. That said assessment was made and said tax was in part levied for the purpose of satisfying an obligation incurred by said utility district in giving, lending and pledging the credit of said utility district by the assumption by said district, during the fiscal year 1928, of the payment of a bonded indebtedness of approximately twenty one million dollars, then owing and unpaid by the East Bay Water Company, a private corporation, and its predecessors in interest.'' And that said assessment and tax are illegal and void for all the reasons specified in said written protest as more fully appears by the statement of facts in the complaint contained.

As to the insufficiency of the complaint: We think there is no misjoinder, and that the plaintiffs are properly joined, under the provisions of section 378 of the Code of Civil Procedure. It is likewise clear that a district such as defendant is not within the inhibition of the provisions of section 18, article XI, of the Constitution, which prohibits any county, city, town, township or school district from incurring in any one year an indebtedness in excess of the annual income of that year. (*Bliss* v. *Hamilton*, 171 Cal. 123 [152 Pac. 303] ; *East Bay Mun. Util. Dist.* v. *Rail-*

*road Com.*, 194 Cal. 603 [229 Pac. 949] ; *In re East Bay etc. Water Bonds of 1925*, 196 Cal. 725 [239 Pac. 38].) For any inhibition of such kind as against the defendant herein, the terms of the organic act (Stats. 1921, p. 245, sec. 12, and the later amendments) must be referred to; and as such inhibition or limitation is statutory and not constitutional, it may be changed or be entirely dispensed with at the will of the legislature. ■ Accordingly if the plaintiffs relied on such statutory limitation or inhibition, and if they wished to show that the defendant herein was affected thereby, it was incumbent on them in their complaint to set forth the facts existing from which under the statute such inhibition or limitation would follow.

■ It is further contended that the contract of purchase entered into December 7, 1928, between the defendant and the East Bay Water Company by which "the former contracted to and did purchase all of the preferred and common stock of the latter company for $13,962,000 and assumed the unsecured indebtedness of the water company, and bought the real and personal property of said water company, subject to a mortgage indebtedness of $20,790,000 which indebtedness said utility district, by said contract of purchase, assumed and agreed to pay" was prohibited by section 31 of article IV of the Constitution, the said section containing the following provisions: "The legislature shall have no power . . . to authorize the giving or lending of the credit . . . of any county . . . or other political corporation or subdivision of the State now existing or that be hereafter established, in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever; . . . and it shall not have power to authorize the State, or any political subdivision thereof, to subscribe for stock, or to become a stockholder in any corporation whatever"; and it is likewise contended that the bonds referred to in the complaint were voted for the construction or acquisition of a distribution system, and not for the purpose of buying stock in a private corporation or of guaranteeing or paying an indebtedness incurred by a private corporation.

It is, however, alleged in the complaint that the defendant "purchased from said East Bay Water Company all of said real and personal property owned by it as aforesaid and purchased all of the preferred and common stock of said East Bay Water Company then issued and outstanding, and amounting to 130,872 shares" (paragraph VIII), and "That on the 8th day of December, 1928, said East Bay Water Company transferred and delivered possession of all its said real and personal property, subject to said liens and encumbrances as aforesaid, to said utility district, and caused to be transferred to said utility district all of said common and preferred stock; and ever since last mentioned date said defendant, East Bay Municipal Utility District, has been and still is in possession of all of said properties and stock, and has been and still is operating a water system throughout said utility district, and has been and still is distributing and selling water to the inhabitants of said utility district." (Paragraph XI.)

Obviously, the foregoing is a very clear allegation that the defendant purchased all the properties of the East Bay Water Company and that it has succeeded thereto and is now the owner and in possession thereof. Where there is such an admitted situation of "purchase" and "sole ownership", there is no "giving or lending of credit" within the meaning of any such prohibitory provisions. The situation contemplated by the prohibitory measure is not present; for the "purchase of all the property" and the "sole ownership" of all the property preclude the conclusion that there has been any joinder with another as an interested party or aided party or that what was done was done in the interest or for the benefit of anyone other than the "purchaser" and "owner". In the reported cases dealing with alleged violations of such a provision as the one recited, we know of no instance where an owner in "the sole control and management" of acquired property as in the situation herein made to appear, has been held to come within any such constitutional or statutory provisions. This distinction incident to "purchase", "exchange" and "sole ownership" is illustrated by the following cases: *Sun Publishing Assn.* v. *Mayor,* 152 N. Y. 257 [46 N. E. 477, 37 L. R. A. 788]; *Brooke* v. *Philadelphia,* 162 Pa. St. 123 [29 Atl. 387, 24 L. R. A. 781]; *Prince* v. *Crocker,* 166 Mass. 347 [44 N. E. 446, 32 L. R. A.

610] ; *Walker* v. *City of Cincinnati,* 21 Ohio St. 14 [8 Am. Rep. 24] ; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110 [99 N. E. 241, Ann. Cas. 1914A, 1054] ; *Chicago* v. *Pittsburg, C. C. & St. L. Ry. Co.,* 244 Ill. 220 [91 N. E. 422, 135 Am. St. Rep. 316] ; *Maffit* v. *City of Decatur,* ·322 Ill. 82 [152 N. E. 602].

Further in this regard, the case of *People ex rel. Murphy* v. *Kelly,* 76 N. Y. 475, dealing with the construction and acquisition of the Brooklyn bridge, affords a very clear illustration of the application of this distinction to a transfer wherein and whereby two public corporations took over and acquired all the property of a private corporation. Therein under a constitutional amendment effective January 1, 1875, reading: "No county, city, town, or village shall hereafter give any money or property, or loan its credit to, or in aid of any individual, association, or corporation, or become directly, or indirectly, the owner of stock in, or bonds of any association or corporation, nor shall such county, city, town, or village be allowed to incur any indebtedness, except for county, city, town, or village purposes," it was contended that an act passed May 14, 1875, providing that "the bridge in the course of construction· over the East river, between the cities of New York and Brooklyn, by the New York Bridge Company, shall be a public work of the cities of New York and Brooklyn, and for the dissolution of said company, and the completion and management of the said bridge, by the said cities", was in conflict with the constitutional provisions just recited; but the court held that it was not the purpose or the effect of the act to make the city of New York a stockholder in the bridge company or to cause it to loan any money or credit to such company. It was the purpose of the act to extinguish the company and vest all its property in the two cities for a public purpose. The cities already owned most of the stock and property of the company, and a way was provided by which they could become the *owners of the balance of the property.* All the money they paid for stock or upon the debts of the company was simply in furtherance of the purpose to vest the property of the bridge in the two cities, and it was not paid to aid the company or to make the cities stockholders therein. The effect was to be the dissolution of the company and the transfer of its property.

Under the allegations of the complaint that on December 7, 1928, the defendant acquired the ownership of the East Bay Water Company properties and is now in possession and in operation thereof and it appearing that such acquisition was but the purpose and object of what was done, we can see no basis or support for the contention that the credit of the state or of the district was loaned or that section 31 of article IV of the Constitution was in any way violated.

It is contended further that the levy of August 28, 1929, was in violation of the constitutional provision prohibiting impairing the obligation of contract. Of course, if the said tax levy or the amendments of the organic utility act evidently relied upon by the district as warranting the making of said levy in the manner in which it was, impaired the obligation of contract, they would be obnoxious to such provision; but within the meaning of the said prohibitory provision, we cannot see that the district under the exercise of this power of taxation which the state has seen proper to grant to the district, has impaired anyone's contract or that there is any contract or contractual relationship with the district or with the state or with anyone else that is shown to be affected or impaired by the tax levy in question.

The other limitations relied on by plaintiffs to support their contention as to the illegality and invalidity of the purchase of December 7, 1928, and of the levy of August 28, 1929, are statutory and not constitutional limitations; and hence they are what may be changed or be entirely dispensed with at the will of the legislature. Under the situation herein presented we are of the opinion that the legislature had the plenary power also to change, revoke, lessen or enlarge the powers that are herein involved of the district and that the scheme set forth in Statutes of 1921, page 245, and amendments thereto, is framed on the ground and theory that there is reserved to the legislature such plenary power and right so to amend when it may be deemed expedient or proper so to do—a power and right restrained only by the necessity of protecting vested rights. In the legislation and subsequent tax levy here involved, no vested rights on the part of the plaintiffs were affected or impaired. (*City of Sacramento* v. *Adams*, 171 Cal. 458 [153 Pac. 908]; *La Mesa etc. Irr. Dist.* v. *Halley*, 197 Cal. 50 [239 Pac. 719]; *Wisconsin & Michigan Ry. Co.* v. *Powers*, 191 U. S. 379

[24 Sup. Ct. Rep. 107, 48 L. Ed. 229] ; *Spurrier* v. *Neumiller,* 37 Cal. App. 683 [174 Pac. 338].)

Entertaining the view that the levy of August 28, 1929, is supported by the taxing power granted the district under the terms of the organic act and is in substantial conformity with the power so granted and that the allegations of count one and the odd-numbered counts of the complaint relied on by the plaintiffs, do not under the terms of the organic act set forth wherein the levy complained of is illegal or invalid by reason of anything prohibited by law, we hold that the demurrer for insufficiency of facts, in this aspect, was good.

The second cause of action, that set forth in the second count and in all the even-numbered counts of the complaint, will now be taken up. The substance of the allegations material and pertinent to the attacks made by the demurrer appear to be as follows:

That on December 8, 1928, the district acquired a distribution system and that at all times since said date the defendant has been engaged in the business of distributing and selling water to the inhabitants of said district and is the only medium distributing water to its inhabitants, the population of which exceeds 450,000 people, and has enjoyed a monopoly in the sale of such water; that at all times since said December 8, 1928, said utility district could and now can fix such charges for said water distributed and sold by it as aforesaid and at all times since last-mentioned date could and now can collect such revenues from the operation of said water system and public utility as will pay and meet all legal expenses and lawful obligations and render said district self-sustaining; that the district's sole revenue since December 8, 1928, is derived from the sale of water; that at all times since December 8, 1928, the annual expenses of the district exceed $6,700,000; the rates fixed by the district are such as to produce a sum which falls short of $6,700,000 by $2,200,000, thereby causing an annual deficit in the operation of said water system project and the maintenance of said district of more than $2,200,000; and to meet such deficit levied the tax in dispute in this action; that said tax was levied by said utility district to provide funds to meet and pay the interest on indebtedness assumed and incurred by it and to meet and pay the annual expenses of the govern-

ment of said district and the operating expenses of said utility and to provide funds wherewith to pay and satisfy said indebtedness assumed by it.

It will be noted that the East Bay Water Company's system was taken over December 8, 1928, and that the tax levy herein attacked was made on August 28, 1929, and was for the fiscal year beginning July 1, 1929, and ending on June 30, 1930. The resolution making the said levy and the protest of plaintiffs against the tax have both been recited in the first part of this opinion. It thus appears that during the fiscal year of 1928 the defendant had operated the said water system for approximately seven months and that at the time of the levy the second month of the fiscal year of 1929 was drawing to a close; and it would also appear from the recitals of the resolution that the board had determined that under the situation confronting the district, in that "the revenues thereof will not be sufficient to pay the principal or interest on the bonded debt of the District as it becomes due or to carry out the objects and purposes of the District", it was necessary to raise by taxation the sum of $2,031,650. To raise such amount, said tax of fifty cents upon each one hundred dollars of the assessed valuation of the property of the district was levied.

It is contended by plaintiffs that the district having since December 8, 1928, engaged in the business of selling water to the consumers thereof in said district and having the power to fix rates, it should have met all its legal obligations from the sale of such water at rates made high enough to effect such result, and failing so to do, it was prohibited by law from thereafter levying or collecting taxes.

The allegations of the complaint in so far as they may be regarded as dealing with or as asserting the "power" of the defendant district to make or fix rates without limit or restriction and its duty to do so, must under the familiar rule in demurrer be accorded only such force and effect as they derive from the law; in other words, such allegations are good and well plead only to the extent that they accord with the law.

At the time of the levy, the tax powers of the district in particulars pertinent to this consideration, embraced among others the following provisions: "Sec. 12. Any municipal

utility district incorporated as herein provided shall have power: . . . Fourth—To take by grant, purchase, gift, devise, or lease, or condemn in proceedings under eminent domain, or otherwise acquire, and to hold and enjoy real and personal property of every kind within or without the district necessary to the full or convenient exercise of its powers. The directors of the district may lease, mortgage, sell or otherwise dispose of any real or personal property within or without the district when in their judgment it is for the best interests of the district so to do. The provisions of this section shall apply to all sales or mortgages heretofore or hereafter made. . . . Eighth—To borrow money and incur indebtedness, and to issue bonds or other evidences of such indebtedness; also to refund or retire any indebtedness that may exist against or be assumed by the district; *provided,* no indebtedness shall be incurred exceeding the ordinary annual income and revenue of the district without the approval of a two-thirds vote of the electors voting on the proposition to incur such indebtedness; *provided, however,* that a further vote of the electors is not required for any indebtedness heretofore or hereafter incurred within the purposes and not exceeding the available amount of any previously authorized bond issue and as to such indebtedness the proceeds of any of such bonds unexpended in the treasury of the district, or the par value of any of such bonds which are unsold shall be deemed a part of the ordinary annual income and revenue of such district.'' ''Sec. 20. (1) If, in the opinion of the board of directors, the revenues will not be sufficient to pay the principal or interest on any bonded debt as it becomes due, or to carry out the objects and purposes of the district, then said board shall levy a tax for such purpose or purposes and fix the amount of money necessary to be raised therefor by taxation. The words 'revenue producing utilities' as used in this act shall be deemed to mean such utilities as those from which revenue is customarily or may be derived by means of charges, rates, or rentals imposed upon or collected from users, consumers or customers thereof, together with such works, facilities and appliances used or useful in connection therewith or incidental thereto.'' (Stats. 1929, pp. 63, 64 and 67.) ''Sec. 18. Only revenue producing utilities shall be acquired, owned or operated by a district formed under the provisions of this

act. The rates and charges for commodities or service furnished shall be fixed by the board of directors. As far as possible utilities shall be self-supporting but in order so to do the board shall not be required to fix a rate which in its opinion is unreasonably high, nor to cover large expenditures and the interest thereon required for future needs and development.'' (Stats. 1929, p. 67.) The latter (sec. 18) read as originally enacted (see Stats. 1921, p. 257) as follows: ''Sec. 18. Only revenue producing utilities shall be acquired, owned or operated by a district formed under the provisions of this act. So far as possible the board of directors shall fix such charges for commodities or services furnished by any revenue producing utility, as will pay the expenses of the government of the district, including salaries, office expenses, and other necessary disbursements; the operating expenses of the utility; the interest on any bonded indebtedness incurred for the acquisition, construction and completion thereof; and provide a sinking or other appropriate fund for the payment of the principal of such debt as it may become due, and also provide an appropriate fund for repairs, replacements and betterments; it being the intention of this section that the district pay all of such charges and expenditures, and the interest and principal of its bonded debt, from the revenues derived by the district from the operation of its public utilities, and that each public utility owned and operated by the district shall be self-sustaining.'' And subdivision 1 of section 20 as originally enacted (see Stats. 1921, p. 258) read as follows: ''Sec. 20. (1) If from any cause the revenues of the district shall be inadequate to pay the principal or interest on any bonded debt as it becomes due, the board of directors must, or if funds are needed to carry out the objects and purposes of the district, which cannot be provided for out of the revenues of the district, then the board of directors may levy a tax for such purposes as herein provided. The board shall state the purposes for which such taxes are necessary, and must fix, by resolution, the amount of money necessary to be so raised by taxation.''

It will be noted that section 18 of the organic act as in effect at the time of the tax levy provides that ''as far as possible utilities shall be self-supporting but in order so to do the board shall not be required to fix a rate which

in its opinion is unreasonably high, nor to cover large expenditures and the interest thereon required for future needs and development'', and it will also be noted that said section 18 as originally enacted and until changed by amendment provided that ''so far as possible the board of directors shall fix such charges for commodities or service furnished by any revenue producing utility, as will pay the expenses of the government of the district . . . '' and to make the district self-supporting. When we take into consideration the context and the manifest purpose of the act, in what sense are we to understand these words ''so far as possible''? Are they to be understood to have reference to the exercise of a mere physical power or to have the exercise of power unrestricted by considerations involving the justice or fairness or propriety of so doing or the probable results thereof in so far as the district was concerned? █ The meaning to be attached to such words as ''if possible'', ''as soon as possible'', ''as far as possible'', ''so far as possible'', is very frequently, as it is here in our opinion with regard to ''so far as possible'', controlled and restricted by the context, the subject matter and the manifest result sought to be attained under the entire scheme projected. Such restricted signification will be and should be attached where it is manifest from the context, the subject matter and the obvious result sought to be attained, that considerations of propriety and reasonableness involving some range of judgment and discretion, inhere. (*Pyles* v. *Atchison, T. & S. F. Ry. Co.,* 97 Kan. 455 [155 Pac. 788]; *Forbes* v. *Mohr,* 69 Kan. 342 [76 Pac. 827]; *Vanderslice* v. *Newton,* 4 N. Y. 130.)

That conditions may arise in the launching of a utility district that may make it necessary and expedient to have recourse to the taxing power is a circumstance that has been noticed and recognized by the court in *In re East Bay etc. Water Bonds of 1925, supra.* That the district is clothed under the organic act with a taxing power such as was made use of and exercised in this tax levy, we think is clearly manifest from the terms of the act. The power is granted in express terms, and the levy made by the defendant is virtually cast in the express terms of the act.

█ Moreover, as a general proposition the power of taxation is regarded as a most important and essential attribute of a public corporation or utility in order that there

may be the ability to function generally and freely under exigencies and situations that may present themselves; and unless the exercise of such power is in the clearest of terms prohibited, it is never denied. (*Avery* v. *Job*, 25 Or. 512 [36 Pac. 293]; *Attorney General* v. *Salem*, 103 Mass. 138; *Carlton* v. *Salem*, 103 Mass. 141; *Sinclair* v. *Mayor of Fall River*, 198 Mass. 248 [84 N. E. 453]; *St. Louis-S. F. Ry. Co.* v. *Andrews*, 137 Okl. 222 [278 Pac. 617]; *In re Orosi Public Utility Dist.*, 196 Cal. 43 [235 Pac. 1004]; *City of Pasadena* v. *Chamberlain*, 204 Cal. 653 [269 Pac. 630]; *People ex rel. Woolsey* v. *Common Council*, 76 N. Y. 20.)

Nor can it be thought that it was the intention or within the contemplation of the legislature that the fact that the district needed the money or that it was under the necessity of raising money in a given amount should be considered as the controlling factor in fixing or setting a price or rate for the water which it was called upon to distribute to its patrons and that any question of the reasonableness or fairness of such set price, relatively speaking, as compared with prices for water generally, should be ignored and disregarded. A fair market value or fair service value is not generally regarded as being dependent upon mere financial necessity or exigency, or as being such as will satisfy such necessity or exigency. (Pond, Public Utilities, sec. 545; *Feil* v. *City of Coeur D'Alene*, 123 Idaho, 32 [29 Pac. 643, 43 L. R. A. (N. S.) 1095].; *Smyth* v. *Ames*, 169 U. S. 466 [18 Sup. Ct. Rep. 418, 42 L. Ed. 819].)

The powers of the district particularly involved herein appear in the organic act (Stats. 1921, pp. 245 to 261) as amended by Statutes of 1927, pages 61, 63, 65, 69, and as amended by chapter 31, Statutes of 1929, pages 58 to 70, wherein among other things sections 18 and 20 were amended, effective August 14, 1929, and section 12 was amended, effective March 29, 1929, by amending subdivision four of said section 12 relating to the acquisition and disposing of real and personal property, providing the right to mortgage same and ratifying sales and mortgages and by amending subdivision eight thereof relating to the indebtedness of such districts including "any indebtedness heretofore or hereafter incurred. . . . " We think that under the powers so appearing to have been granted to the defendant, the express recognition by the legislature of the prior

existence of such power in the defendant and the ratification of past acts of the defendant referable to such powers, we must regard the defendant as having proceeded with legal warrant and in the exercise of a vested discretion in making the tax levy of August 28, 1929, as was done, notwithstanding the defendant at such time was in the possession of the water system and had been operating it since December 8, 1928. Accordingly the allegations of the complaint are insufficient in that they do not show on the part of the defendant and to the oppression of the plaintiffs any fraud, or any abuse of the authority and discretion granted by the legislature. (2 High, Injunctions, sec. 1240; *People ex rel. Carter* v. *Rice,* 135 N. Y. 473 [31 N. E. 921, 16 L. R. A. 836, 850, 851].)

In that the said allegations of count two and of each even-numbered count are insufficient, and that the allegations of count one and of each odd-numbered count are also insufficient as hereinabove mentioned, the judgment of the lower court should be affirmed. It is so ordered.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 27, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 21, 1932.